**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>     v.<br><br>HINO MOTORS, LTD.;<br><br>HINO MOTORS MANUFACTURING U.S.A., INC.; and<br><br>HINO MOTORS SALES U.S.A., INC.,<br><br>   Defendants. | Case No. |
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>   Plaintiff,<br><br>v.<br><br>HINO MOTORS, LTD.;<br><br>HINO MOTORS MANUFACTURING U.S.A., INC.; and<br><br>HINO MOTORS SALES U.S.A., INC.,<br><br>   Defendants. | Case No. |

**CONSENT DECREE**

**TABLE OF CONTENTS**

I.      JURISDICTION AND VENUE ........................................................................6
II.     APPLICABILITY.........................................................................................7
III.    DEFINITIONS...............................................................................................9
IV.     CIVIL PENALTY..........................................................................................22
V.      APPROVAL OF SUBMISSIONS; U.S./EPA/CARB DECISION-MAKING .................25
VI.     COMPLIANCE REQUIREMENTS....................................................................27
        A.  ENGINE COMPLIANCE..................................................................27
        B.  CORPORATE COMPLIANCE ...........................................................39
VII.    MITIGATION................................................................................................56
VIII.   REPORTING REQUIREMENTS .......................................................................62
IX.     STIPULATED PENALTIES ..............................................................................67
X.      FORCE MAJEURE ........................................................................................79
XI.     DISPUTE RESOLUTION ................................................................................82
XII.    INFORMATION COLLECTION AND RETENTION ...............................................85
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS.........................................88
XIV.    COSTS .......................................................................................................92
XV.     NOTICES AND SUBMISSIONS........................................................................92
XVI.    EFFECTIVE DATE........................................................................................95
XVII.   RETENTION OF JURISDICTION ......................................................................95
XVIII.  MODIFICATION ...........................................................................................95
XIX.    TERMINATION.............................................................................................96
XX.     PUBLIC PARTICIPATION ..............................................................................97
XXI.    SIGNATORIES/SERVICE................................................................................98
XXII.   INTEGRATION .............................................................................................98
XXIII.  26 U.S.C. SECTION 162(F)(2)(A)(II) IDENTIFICATION ...........................................99
XXIV.   HEADINGS .................................................................................................99
XXV.    APPENDICES ..............................................................................................99
XXVI.   FINAL JUDGMENT .......................................................................................100

i

## BACKGROUND

A.      Plaintiff the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), is concurrently with the lodging of this Consent Decree filing a complaint in this action (the "U.S. Complaint") alleging that Defendants Hino Motors, Ltd. ("HML"), Hino Motors Manufacturing U.S.A., Inc. ("HMM"), and Hino Motors Sales U.S.A., Inc. ("HMS") (collectively, "Defendants" or "Hino") violated Section 203(a)(1), (a)(2), (a)(3)(A) and (a)(3)(B) of the Clean Air Act (the "CAA" or "Act"), 42 U.S.C. § 7522(a)(1), (a)(2), (a)(3)(A) and (a)(3)(B) with regard to approximately 105,000 Model Year 2010-2019 heavy-duty highway diesel engines and approximately 5,700 Model Year 2011 to 2019 nonroad compression-ignition engines (collectively, the "Subject Engines").

B.      The U.S. Complaint alleges that, for over a decade, Defendants regularly altered emission test data submitted by Defendants to EPA to demonstrate compliance with the air pollution emission standards in the CAA in support of their engine certification applications, obtained the test data through improperly conducted tests, or entirely fabricated the data without conducting any underlying required testing.

C.      The U.S. Complaint alleges that from at least 2010 to 2019, Defendants knowingly submitted materially inaccurate or incomplete emission testing information, or knowingly rendered test data inaccurate, or submitted false or fabricated test data in their applications for EPA Certificates of Conformity ("COCs") for the Subject Engines, in violation of the Act.

D.      EPA may void a manufacturer's COC if the manufacturer intentionally submitted false or incomplete information. 40 C.F.R. §§ 86.007-30(c)(3), 1039.255(e). A COC that has been voided *ab initio* is treated as one that was never granted in the first instance, and all engines

1

or vehicles introduced into commerce under that certificate are considered noncompliant. *See, e.g.*, 40 C.F.R. § 1068.30; *see also* 40 C.F.R. § 1036.801 (defining "void"). On January 10, 2025, EPA's Office of Transportation and Air Quality ("OTAQ") voided *ab initio* the COCs for all Subject Engines.

E.      The U.S. Complaint alleges that Defendants failed to disclose, or adequately disclose, certain software functions and calibrations installed by Defendants in most of the Subject Engines which materially impact their pollution control system. The U.S. Complaint alleges that these software functions and calibrations are Auxiliary Emission Control Devices ("AECDs"), that were either not disclosed or not adequately disclosed in the COC applications during the engine certification process in violation of the Act. The U.S. Complaint also alleges that certain software functions and calibrations installed by Defendants in the Subject Engines are prohibited Defeat Devices, in violation of the Act.

F.      The U.S. Complaint alleges that Defendants (1) sold, offered for sale, introduced into commerce, delivered for introduction into commerce, or imported the Subject Engines, in violation of Section 203(a)(1) of the Act, 42 U.S.C. § 7522(a)(1); (2) failed to submit complete and accurate reports to EPA in violation of Section 203(a)(2) of the Act, 42 U.S.C. § 7522(a)(2); (3) manufactured, sold, offered for sale, or installed parts or components in its Subject Engines where the principal effect of the part or component was the bypassing, defeat, or rendering inoperative of a device or element of design installed on or in the Subject Engines, in violation of Section 203(a)(3)(B) of the Act, 42 U.S.C. § 7522(a)(3)(B); and (4) incorporated software in its Subject Engines that removed or rendered inoperative elements of design of the engines' Emission Control Systems installed in compliance with regulations promulgated under Title II of the Act, in violation of CAA Section 203(a)(3)(A), 42 U.S.C. § 7522(a)(3)(A).

2

G.     The People of the State of California, acting by and through the California Air Resources Board ("CARB" or "Plaintiff"), are concurrently with the lodging of this Consent Decree filing a complaint in this action (the "California Complaint") against Defendants. This Consent Decree partially resolves the claims in the California Complaint. In the California Complaint, CARB alleges that Defendants violated certain provisions of California law — including, without limitation, California Health and Safety Code Sections 43008.6, 43016, 43106, 43151, 43154, 43211, and 43212; California Vehicle Code Section 27156; 13 C.C.R. §§ 1956.8, 1971.1, 2141-2149, 2421, 2423; and 42 U.S.C. § 7604 and 40 C.F.R. § 54.3 — with regard to approximately 15,590 highway diesel engines and 410 nonroad diesel engines manufactured by Defendants and sold and/or distributed in California (a subset of the Subject Engines).

H.     A separate partial consent decree between CARB and Defendants lodged concurrently with this Consent Decree (the "California Partial Consent Decree"), resolves all claims in the California Complaint not resolved in this Consent Decree.

I.     A separate settlement agreement resolves the claims of Rob Bonta, the Attorney General of California, alleging that Defendants violated provisions of California law—including the California False Claims Act, California Government Code Sections 12650-12656, the California Business and Professions Code Sections 17200-17210, California Health and Safety Code Sections 43100 *et seq.*, and California Civil Code Sections 3479-3508.2—with regard to the Subject Engines ("California Attorney General Agreement").

J.     This Consent Decree is one of several coordinated resolutions of federal civil and criminal claims by the United States and federal citizen-suit and state civil claims by California (the "Coordinated Settlements"). The Coordinated Settlements include (1) a Plea Agreement,

3

resolving criminal claims by the United States on behalf of EPA, the National Highway Traffic

Safety Administration ("NHTSA"), and U.S. Customs and Border Protection ("CBP"); (2) this

Consent Decree, resolving civil claims of the United States on behalf of EPA; (3) the California

Partial Decree, resolving civil claims of CARB; (4) the California Attorney General Agreement,

resolving civil claims of the California Attorney General; (5) an administrative Settlement

Agreement resolving civil claims of CBP ("CBP Agreement"); and (6) an administrative

Settlement Agreement resolving civil claims of NHTSA ("NHTSA Agreement").

      K.     The Parties recognize and agree that (1) there are no practical engineering

solutions that would bring the Model Year 2010-2016 Subject Highway Engines, or the Subject

Nonroad Engines, into compliance with the Act without an unacceptably high risk of failure of

any engineered emission modification itself, or of other software or hardware components of the

Emission Control System adversely affected by such modification; and (2) regulations impose

emission standards for the useful lives of engines, defined in years or mileage, and many of these

engines are beyond, or close to, the end of their useful lives.

      L.     Defendants will submit a recall proposal to OTAQ and CARB, as part of an

administrative process under 40 C.F.R. Part 1068, Subpart F, and 13 C.C.R. §§ 2111−20, to

modify the three most recent Model Years of Subject Vehicles. The recall is intended to bring

these vehicles into compliance with applicable emission standards and will be based on testing

conducted pursuant to a testing protocol approved by OTAQ and CARB on January 3, 2025.

      M.     To address the alleged environmental harm that resulted from the Subject

Engines, including additional emissions expected to result from the Subject Engines, including

those referenced in the previous Paragraph, continuing to operate in the field after the Effective

Date, Defendants will fully mitigate the lifetime (past and future) excess emissions from all

4

Subject Engines, through the U.S. Mitigation Program required under Section VII of this Consent Decree and the California Mitigation Payment required under the separate California Partial Consent Decree.

N. Defendants agree that, from 2020 through at least five years after the Effective Date of this Consent Decree, they have not applied and shall continue not to apply for new EPA COCs or CARB Executive Orders for internal combustion engines of any kind (including, e.g., engines fueled by diesel or gasoline), as provided in Paragraphs 39 and 50.

O. The United States and CARB reviewed Financial Information submitted by Defendants and determined that Defendants have a limited financial ability to pay a civil penalty and to fund injunctive relief in this action.

P. Defendants certify that, prior to the Date of Lodging, HML secured a loan for, and placed into an escrow or depository account administered by an institution whose escrow or depository operations, as applicable, are regulated and examined by a federal or state agency, $679 million dedicated to the satisfaction of near-term obligations to make civil penalty and other payments in resolution of civil claims under the Coordinated Settlements, including all obligations to make civil penalty payments within 30 Days of the Effective Date of this Consent Decree and the entry or finalization of the other settlement documents comprising the Coordinated Settlements.

Q. EPA and CARB consider the terms set forth in this Consent Decree, together with the California Partial Consent Decree, to be an appropriate resolution of their respective allegations in the Complaints.

R.      The Parties recognize, and the Court by entering this Consent Decree finds, that

this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation

among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the

adjudication or admission of any issue of fact or law by any Party except as provided in

Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND

DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to

28 U.S.C. §§ 1331, 1345, and 1355, and Sections 203, 204, 205, and 213(d) of the Act,

42 U.S.C. §§ 7522, 7523, 7524, and 7547(d), and over the Parties. Venue lies in this District

pursuant to 28 U.S.C. §§ 1391(b), (c) and 1395(a). The Court has supplemental jurisdiction over

the state law claims asserted in the California Complaint pursuant to 28 U.S.C. § 1367. For

purposes of this Consent Decree, or in any action to enforce this Consent Decree, Defendants

consent to this Court's jurisdiction over this Consent Decree and over any action to enforce this

Consent Decree, and over Defendants, and consent to venue in this judicial district. Defendants

reserve the right to challenge and oppose any claims to jurisdiction that do not arise from the

Court's jurisdiction over this Consent Decree or an action to enforce this Consent Decree.

2.      For purposes of this Consent Decree only, Defendants agree that: (i) the U.S.

Complaint states claims upon which relief may be granted, pursuant to Sections 203, 204, 205,

and 213(d) of the Act, 42 U.S.C. §§ 7522, 7523, 7524, and 7547(d); and (ii) the California

Complaint states claims upon which relief may be granted, pursuant to California Health and

Safety Code Sections 43008.6, 43016, 43151, 43154, 43211, and 43212; California Vehicle

Code Section 27156; 13 C.C.R. §§ 1956.8, 1971.1, 2141-2149, 2421, and 2423; and 42 U.S.C. § 7604 and 40 C.F.R. § 54.3.

3.      Defendants agree, and the Court by entering this Consent Decree finds, that EPA has voided *ab initio* the Certificates of Conformity for the Subject Engines, and Defendants shall not contest this voiding.

## II.    APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States and CARB, and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

5.      Defendants' obligations under this Consent Decree are joint and several, unless expressly stated otherwise in this Decree. In the event of the insolvency of any Defendant or the failure of any Defendant(s) to implement any requirement of this Consent Decree, the remaining Defendant(s) shall complete all such requirements.

6.      No transfer of ownership or operation of any of Defendants' businesses (by, e.g., merger or acquisition), whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendants of their obligations to ensure that the terms of the Consent Decree are implemented, unless (a) the transferee agrees to undertake the obligations required by the Consent Decree and to be substituted for the applicable Defendant as a Party under this Consent Decree, and thus be bound by the terms thereof, (b) the United States and CARB consent to relieve the applicable Defendant of its obligations, and (c) the Court consents to the substitution. The United States' or CARB's decision to refuse to approve the substitution of the transferee for the applicable Defendant as a Party shall be subject to dispute resolution and judicial review under Section XI (Dispute Resolution), but must be upheld unless arbitrary and

7

capricious. Among the criteria the United States and CARB will use in guiding its decision are the proposed transferee's financial and technical ability to comply with the requirements of this Consent Decree, and whether the proposed transferee has a history of noncompliance with the Act, its implementing regulations, or analogous requirements. At least 30 Days prior to such transfer, Defendants shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written transfer agreement, to the United States, EPA, CARB, and the California Attorney General, in accordance with Section XV (Notices and Submissions). Any attempt to transfer ownership or operation of any of Defendants' businesses without complying with this Paragraph constitutes a violation of this Consent Decree.

7.      Not more than 30 Days after Lodging, Defendants shall provide copies of this Consent Decree (including Appendices) to the members of their Boards of Directors and to their officers, directors, employees, and agents whose duties might reasonably include compliance with, or oversight of compliance with, any provision of this Consent Decree. Defendants shall also ensure that any contractor, Dealer, agent, and employee whose duties might reasonably include compliance with any provision of the Consent Decree is made aware of those requirements relevant to their performance. Defendants shall make best efforts to condition any contract for performance of work required under this Consent Decree upon performance of the work in conformity with the terms of this Consent Decree.

8.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their officers, directors, contractors, Dealers, agents or employees, to take any actions necessary to comply with the provisions of this Consent Decree, except in accordance with the provisions of Section X (Force Majeure).

### III.   DEFINITIONS

9.     Capitalized terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Capitalized terms used in this Decree that are defined in the California Health and Safety Code or in CARB regulations promulgated pursuant to the California Health and Safety Code shall have the meanings assigned to them in the California Health and Safety Code or such regulations, unless otherwise provided in this Consent Decree. Capitalized terms that are defined in this Consent Decree are defined for purposes of this Consent Decree only and are not defined or applicable for any other purpose. Whenever the capitalized terms set forth below are used in this Consent Decree, the following definitions apply:

a.     "Air Pollution Control Fund" means the fund established by California Health and Safety Code Section 43015.

b.     "Approved Emission Modification" or "Emission Modification" means a Proposed Emission Modification submitted by Defendants and approved by EPA and CARB pursuant to Paragraphs 22–26.

c.     "Auxiliary Emission Control Device" or "AECD" means any element of design which senses temperature, vehicle speed, engine revolutions per minute, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the Emission Control System, as provided in 40 C.F.R. § 86.1803-01.

d.     "Business Day" means a calendar day that does not fall on a Saturday, Sunday, or federal or California holiday. In computing any period of time under this Consent

9

Decree, where the last Day would fall on a Saturday, Sunday, or federal or California holiday, the period shall run until the close of business of the next Business Day. The time in which any act provided by this Consent Decree is to be done is computed by excluding the first day, and including the last, unless the last day is a Saturday, Sunday, or federal or California holiday, and then it is also excluded.

e.    "California" means the People of the State of California, acting by and through the California Air Resources Board, and where it is used to refer to California state statutes or regulations only, it means the State of California.

f.    "California Attorney General" means California Attorney General Rob Bonta and any of his successors.

g.    "California Complaint" means the complaint filed by the State of California in this action.

h.    "California Credited Vehicles" has the meaning provided under Paragraph 31.b.

i.    "California Partial Consent Decree" means a separate partial consent decree between CARB and Defendants lodged concurrently with this Consent Decree that resolves claims, as set forth therein, in the California Complaint not resolved in this Consent Decree, which is part of the Coordinated Settlements.

j.    "California Recall Target Rate" means the Emission Modification Program implementation rate of at least 85% of Eligible Vehicles in the J05E Recall Group registered in California and 85% of the Eligible Vehicles J08E Recall Group registered in California specified in Paragraph 31.

10

k.      "CARB" means the California Air Resources Board and any of its successor departments or agencies.

l.      "CBP" means U.S. Customs and Border Protection, a component of the U.S. Department of Homeland Security, and any of its successor departments or agencies.

m.      "CBP Agreement" means the administrative settlement agreement resolving civil claims as set forth therein by CBP against Defendants, which is part of the Coordinated Settlements.

n.      "CDX" means Central Data Exchange, EPA's electronic reporting site which can be found at https://cdx.epa.gov/.

o.      "Certificate of Conformity" or "COC" means the document that EPA issues to a vehicle or engine manufacturer to certify that a vehicle or engine class conforms to EPA emissions control requirements, as provided in 40 C.F.R. Subchapters C and U.

p.      "Class Action Settlement" means the Class Action Settlement Agreement resolving claims against Defendants by owners and lessees of Subject Vehicles, approved by the U.S. District Court for the Southern District of Florida on April 1, 2024, in *Express Freight International, et al. v. Hino Motors, Ltd. et al.*, No. 1:22-cv-22483-Gayles/Torres (S.D. Fla.).

q.      "Clean Air Act" or "Act" means 42 U.S.C. §§ 7401–7671q.

r.      "Complaints" means the U.S. Complaint and the California Complaint.

s.      "Compliance Incentive Program" has the meaning provided in Paragraph 45.c.

t.      "Compliance Standards" has the meaning provided in Paragraph 44.d.

u.      "Confidential Business Information" or "CBI" means information protected under 40 C.F.R. Part 2 and/or comparable California law, including California Government Code Section 7920.000 *et seq.* and 17 C.C.R. §§ 91000 *et seq.*

v.      "Consent Decree" or "Decree" means this Consent Decree and all appendices attached hereto, listed in Section XXV (Appendices).

w.      "Coordinated Settlements" means six coordinated resolutions of federal civil and criminal claims by the United States and federal citizen-suit and state civil claims by California, including:  (i) a Plea Agreement, resolving criminal claims as set forth therein by the United States on behalf of EPA, NHTSA, and CBP; (ii) this Consent Decree, resolving civil claims as set forth herein of the United States on behalf of EPA; (iii) the California Partial Consent Decree; (iv) the California Attorney General Agreement; (v) the CBP Agreement; and (vi) the NHTSA Agreement.

x.      "Corporate Compliance Plan" has the meaning provided under Paragraph 49.c (Corporate Compliance Plan and Annual Reviews).

y.      "Corporate Compliance Provisions" means the compliance measures provided in Section VI.B (Corporate Compliance).

z.      "Corporate Compliance Report" has the meaning provided under Paragraph 49.b (Reporting Requirements for Corporate Compliance).

aa.     "Credited Vehicle" means an Eligible Vehicle that has received the Approved Emission Modification by the Recall Target Deadline specified in Paragraph 31 or a Subject Vehicle that is designated as an Ineligible Vehicle by the Recall Target Deadline specified in Paragraph 31.

12

bb.     "Date of Lodging" means the date this Consent Decree is lodged with the Court.

cc.     "Day" means a calendar day unless expressly stated to be a Business Day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, a federal holiday, or a California holiday, the period runs until the close of business of the next Business Day. The time in which any act provided by this Consent Decree is to be done is computed by excluding the first day, and including the last, unless the last day is a Saturday, Sunday, a federal holiday, or California holiday, and then it is also excluded.

dd.     "Dealer" means any entity or individual authorized by Defendants to sell and service Hino brand engines or vehicles in the United States.

ee.     "Defeat Device" has the meaning provided under 40 C.F.R. § 86.004-2.

ff.     "Defendants" or "Hino" means Hino Motors, Ltd. ("HML"), Hino Motors Manufacturing U.S.A., Inc. ("HMM"), and Hino Motors Sales U.S.A., Inc. ("HMS").

gg.     "DOJ" means the United States Department of Justice and any of its successor departments or agencies.

hh.     "Effective Date" means the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket, under Section XVI (Effective Date).

ii.     "Eligible Lessee" means: (1) a current lessee of a Subject Vehicle with an active lease as of the Date of Lodging, and any subsequent lessee of that vehicle; and (2) solely for purposes of any applicable Extended Warranty for Modified Vehicles, a lessee of an Eligible Vehicle that has received an applicable Approved Emission Modification.

13

jj.     "Eligible Owner" means: (1) the owner or owners of a Subject Vehicle as of the Date of Lodging, and any subsequent owner or owners of that vehicle; and (2) solely for purposes of any applicable Extended Warranty for Modified Vehicles, the owner or owners of an Eligible Vehicle that has received an applicable Approved Emission Modification.

kk.     "Eligible Vehicle" means a Subject Vehicle that is eligible for an Approved Emission Modification that is: (1) registered with a state department of motor vehicles ("DMVs") or equivalent agency or held by a Dealer or unaffiliated dealer and located in the United States; (2) Operable as of the date the vehicle is brought in for an applicable Approved Emission Modification; and (3) operates with an automatic transmission.

ll.     "Emission Control System" means all emission control devices, auxiliary emission control devices, engine modifications and strategies, and other elements of design that are used to control exhaust emissions of a vehicle.

mm.     "Emission Modification Program" is the program required under Section VI.A (Engine Compliance).

nn.     "Engine Family" means a collection of engines grouped for certification and compliance purposes that are expected to have similar emission characteristics throughout their useful life. Each Engine Family is assigned a unique alphanumeric Engine Family name that begins with a one-digit Model Year date code.

oo.     "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

pp.     "Executive Order" means an order issued by CARB to certify a particular Model Year Engine Family in combination with one or more evaporative families that meets

14

CARB regulatory requirements for sale, lease, importation into, and entry into commerce in California.

qq.     "Extended Warranty for Modified Vehicles" means the warranty provided pursuant to Paragraph 32.

rr.     "Extended Warranty for Subject Vehicles" means the warranty provided pursuant to Paragraph 33.

ss.     "Extended Warranty Programs" means the Extended Warranty for Subject Vehicles and the Extended Warranty for Modified Vehicles, under Paragraph 21.c.

tt.     "External Compliance Consultant" has the meaning provided in Paragraph 49.a.

uu.     "Field Fix" has the meaning pursuant to 40 C.F.R. § 86.1842-01(b), 13 C.C.R. §§ 1961(d), 1961.2(d), CARB Manufacturer's Advisory Correspondence #79-002, "Field Fixes Involving Emission-Related Components" (Jan. 31, 1979), and/or EPA Advisory Circular 2B, *Field Fixes Related to Emission Control-Related Components* dated March 17, 1975, as applicable.

vv.     "Financial Information" means the documentation identified in Appendix D, which was submitted to the United States by Defendants and which Defendants assert includes Confidential Business Information.

ww.     "Heavy-duty Engine" has the meaning set forth in 40 C.F.R. § 86.082-2.

xx.     "Hino Recall Website" has the meaning provided in Paragraph 38.a.

yy.     "Independent Compliance Auditor" has the meaning provided under Paragraph 50.f (Independent Compliance Auditor).

zz.     "Ineligible Vehicle" means any Eligible Vehicle on which the Defendants are not required to install an applicable Approved Emission Modification, as provided in Paragraph 29.

aaa.     "J05E Recall Group" means Subject Vehicles equipped with Model Year 2017−2019 J05E engines from the following Engine Families: HHMXH05.1JTP, JHMXH05.1JTP, and KHMXH05.1JTP.

bbb.     "J08E Recall Group" means Subject Vehicles equipped with Model Year 2017−2019 J08E engines from the following Engine Families:  HHMXH07.7JVB, HHMXH07.7JWU, JHMXH07.7JVB, and KHMXH07.7JVB, excluding those engines with manual transmissions.

ccc.     "Line-haul locomotive" means a locomotive that does not meet the definition of switch locomotive in 40 C.F.R. § 1033.901, as provided in Paragraph 56.c (Line-Haul Locomotive Projects).

ddd.     "Line-Haul Locomotive Project" means a U.S. Mitigation Project to repower or replace a line-haul locomotive, so that the repowered or replaced locomotive has a new upgraded engine certified to EPA Tier 4 or more stringent locomotive emission standards, under 40 C.F.R. § 1033.101, pursuant to Paragraph 56.c (Line-Haul Locomotive Projects).

eee.     "Marine Project" means a U.S. Mitigation Project to repower or replace a marine vessel used as a tugboat, towboat, or dredge, so that the repowered or replaced vessel has a new upgraded engine certified to EPA Tier 4 or more stringent locomotive emission standards, under 40 C.F.R. § 1042, Subpart B, pursuant to Paragraph 56.e (Marine Projects).

fff.     "Mitigation Implementation Plan" means the plan Defendants must submit under Paragraph 53 for implementation of the U.S. Mitigation Program.

16

ggg.    "Mitigation Project" means a locomotive or marine vessel repower, replacement, or idle reduction project funded and completed as part of the U.S. Mitigation Program, described in Paragraphs 55–57.

hhh.    "Model Year" or "MY" has the meaning provided under 40 C.F.R. § 86.082-2 when applied to Heavy-duty Engines and has the meaning provided under 40 C.F.R. § 1039.801 when applied to Nonroad Engines.

iii.    "Modified Vehicle" means an Eligible Vehicle which received an Approved Emission Modification.

jjj.    "National Credited Vehicles" has the meaning provided under Paragraph 31.a.

kkk.    "National Recall Target Rate" means the nationwide Emission Modification implementation rate of at least 85% of Eligible Vehicles in the J05E Recall Group in the United States, and 85% of the Eligible Vehicles in the J08E Recall Group in the United States specified in Consent Decree Paragraph 31.

lll.    "NHTSA" means the National Highway Traffic Safety Administration, a component of the United States Department of Transportation, and any of its successor departments or agencies.

mmm.  "NHTSA Agreement" means the administrative settlement agreement between NHTSA and Defendants resolving civil claims as set forth therein of NHTSA against Defendants, which is part of the Coordinated Settlements.

nnn.    "Nonroad Engine" has the meaning set forth in 40 C.F.R. § 1039.801.

ooo.    "NOx" means oxides of nitrogen, i.e., the sum of the nitric oxide and nitrogen dioxide contained in a gas sample as if the nitric oxide were in the form of nitrogen dioxide.

ppp.    "On-Board Diagnostic System" or "OBD System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for monitoring all systems and components that must be monitored pursuant to the version of 13 C.C.R. § 1971.1 applicable at the time of certification for the particular Model Year of a Subject Engine, for the purpose of identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the vehicle's malfunction indicator light ("MIL").

qqq.    "Operable" means able to be driven under a vehicle's own engine power.

rrr.    "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

sss.    "Particulate Matter" or "PM" means particulates formed during the diesel combustion process and measured by the procedures specified in 40 C.F.R. Part 86, Subpart B.

ttt.    "Parties" means the United States, California, and Defendants.

uuu.    "Plaintiffs" means the United States and California.

vvv.    "Proposed Emission Modifications" means the proposed modifications, alterations, repairs, corrections, adjustments, or other proposed changes to vehicles in the J05E Recall Group and the J08E Recall Group, designed to bring the vehicles into compliance with applicable emission standards, that Defendants must submit to OTAQ and CARB pursuant to Paragraph 22 (Administrative Recall Process).

18

www.   "Recall Target Deadline" means the date by which the Defendants shall meet the National Recall Target Rate and California Recall Target Rate under Paragraph 31.

xxx.   "Record" or "Records" means documents, records, reports, or other information (in hard-copy or electronic form) and all non-identical copies thereof.

yyy.   "Remedial Plan" means a plan, including all elements set forth in 42 C.F.R. § 1068.510 and 13 C.C.R. § 2114(a)(1−9), that Defendants are required to submit to OTAQ and CARB in the administrative recall process, pursuant to Paragraph 22.a (Remedial Plans).

zzz.   "Required Trainees" means trainees required to receive Technical Compliance Training under Paragraph 46.a (Technical Compliance Training).

aaaa.   "Running Change" has the meaning provided under 40 C.F.R. § 86.1803-01.

bbbb.   "Section" means a portion of this Consent Decree identified by a Roman numeral or a section of a statute or regulation, as applicable.

cccc.   "Subject Engines" means any engines identified in Appendix A. These engines (i) were sold or offered for sale in, or introduced or delivered for introduction into commerce in, the United States, or imported into the United States by Hino; and (ii) are or were purported by Hino to have been covered by the COCs for EPA Engine Families listed in Appendix A, including such engines sub-categorized as a Subject Highway Engine or Subject Nonroad Engine.

dddd.   "Subject Highway Engine" means the subset of Subject Engines identified in Appendix A that are categorized as "Highway."

19

eeee.   "Subject Nonroad Engine" means the subset of Subject Engines identified in Appendix A that are categorized as "Nonroad."

ffff.   "Subject Vehicle" means any vehicle that (i) contains a Subject Highway Engine and (ii) was sold or offered for sale, or introduced or delivered for introduction into commerce, in the United States or its Territories, or registered in the United States or its Territories, or imported into the United States or its Territories.

gggg.   "Submission" means any document, certification, plan, report, notification, statement of position, data, application, or other item or information that is required to be submitted for review or approval pursuant to this Consent Decree.

hhhh.   "Supplemental Compliance Plan" means a supplemental compliance plan to be submitted by Defendants to the United States, EPA, and CARB for their review and approval, in the event Defendants resume applications for EPA COCs or CARB Executive Orders for internal combustion engines, including provisions for retention and oversight of an Independent Compliance Auditor and for U.S. Environmental Law compliance assurance, under Paragraph 50 (Future Engine Certification and Independent Compliance Auditor).

iiii.   "Supplemental Compliance Report" means the supplemental compliance report submitted by an Independent Compliance Auditor to the United States, EPA, CARB, and Defendants, in accordance with the Supplemental Compliance Plan, under Paragraph 50.f (Independent Compliance Auditor).

jjjj.   "Switch Locomotive" means a locomotive used in freight yards to assemble and disassemble trains, or used for short hauls of small trains, powered by an engine with a maximum rated power (or a combination of engines having a total rated power) of 2,300

horsepower or less, as provided under 40 C.F.R. § 1033.901 and referenced in Paragraph 56.b (Switch Locomotive Projects).

kkkk.   "Switch Locomotive Idle Reduction Project" means a U.S. Mitigation Project that reduces idling time, fuel usage, and pollutant emissions by outfitting a switch locomotive with an Automatic Engine Shutdown / Startup ("AESS") system that relies on zero-emission auxiliary power, pursuant to Paragraph 56.d (Switch Locomotive Idle Reduction Projects).

llll.   "Switch Locomotive Project" means a U.S. Mitigation Project to repower or replace a switch locomotive, so that the repowered or replaced locomotive has a new upgraded engine certified to EPA Tier 4 or more stringent locomotive emission standards, under 40 C.F.R. § 1033.101, pursuant to Paragraph 56.b (Switch Locomotive Projects).

mmmm.   "Technical Compliance Audit" means an internal technical compliance risk audit conducted by Defendants at least annually, under Paragraph 47 (Risk Management and Auditing).

nnnn.   "Technical Compliance Training" means the technical compliance training for Required Trainees under Paragraph 46.a (Technical Compliance Training).

oooo.   "United States" or "U.S." means the United States of America, acting on behalf of EPA. For purposes of this Consent Decree, geographic references to the "United States" shall mean the United States of America's 50 states, District of Columbia, and permanently inhabited territories of American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands.

pppp.   "U.S. Complaint" means the complaint filed by the United States in this action.

21

qqqq.  "U.S. Environmental Law" means United States and California environmental laws and regulations related to vehicle and engine certification and emissions, as applicable depending on whether and when Defendants resume applications for new EPA COCs or CARB Executive Orders for internal combustion engines (including, e.g., engines fueled by diesel or gasoline).

rrrr.  "U.S. Mitigation Program" means the program to reduce emissions from locomotives and marine vessels, as described in Section VII (Mitigation).

ssss.  "VIN" means vehicle identification number, as defined in 49 C.F.R. § 565.12.

tttt.  "Whistleblower Systems" has the meaning provided in Paragraph 45.b.

## IV.  CIVIL PENALTY

10.  <u>Civil Penalty Payments Under this Consent Decree</u>. Defendants provided Financial Information that demonstrates that Defendants have a limited ability to pay a civil penalty at this time. Within 30 Days of the Effective Date, Defendants shall pay the sum of $525,000,000 as a civil penalty, together with interest accruing from the Date of Lodging, at the rate specified in 28 U.S.C. § 1961. Defendants are jointly and severally liable for payment of the civil penalty, as required by this Section. The civil penalty payment required under this Paragraph will be divided between the United States and CARB as follows:

a.  Defendants shall pay the United States $442,500,000 (together with the accrued interest on that amount).

b.  Defendants shall pay CARB $82,500,000 (together with the accrued interest on that amount).

      c.      The civil penalty in this Paragraph 10 resolves the civil claims of (i) EPA, as provided in this Consent Decree; (ii) CBP, as provided in the CBP Agreement; (iii) NHTSA, as provided in the NHTSA Agreement; and (iv) CARB, as provided in the California Partial Consent Decree. All of these decrees and agreements are part of the Coordinated Settlements.

      11.     <u>Instructions for Payment to the United States</u>.

      a.      Defendants shall pay the amount set forth in Paragraph 10.a to the United States by FedWire Electronic Funds Transfer to the DOJ account, in accordance with instructions provided to Defendants by the United States Attorney's Office for the Eastern District of Michigan after the Effective Date. The payment instructions provided by the United States Attorney's Office will include a CDCS number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The United States Attorney's Office will provide the payment instructions to:

> Hino Motors, Ltd.
> 3-1-1, Hinodai, Hino-Shi, Japan
> Attention: Satoshi Misawa
> Email: satoshi.miasawa@hino.co.jp

on behalf of Defendants no later than five Business Days after the Effective Date. Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to DOJ and EPA in accordance with Section XV (Notices and Submissions).

      b.      At the time of payment to the United States, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to EPA via email or regular mail in accordance with Section XV (Notices and

Submissions); and (iii) to DOJ via email or regular mail in accordance with Section XV (Notices

and Submissions). Such notice shall state that the payment is for the civil penalty owed pursuant

to the Consent Decree in *United States v. Hino Motors, Ltd. et al.* and shall reference the civil

action number, CDCS Number, and DOJ case number 90-5-2-1-12485.

12.   Instructions for Payment to CARB.

a.   Defendants shall pay the amount set forth in Paragraph 10.b to the

"California Air Resources Board" by check, accompanied by a Payment Transmittal Form

(which CARB will provide to the addressee listed in Paragraph 11.a no later than five Business

Days after the Effective Date), with the check mailed to:

> California Air Resources Board
> Accounting Office
> P.O. Box 1436
> Sacramento, CA 95812-1436

or by wire transfer, in which case Defendants shall use the following wire transfer information

and send the Payment Transmittal Form to the above address prior to each wire transfer:

> State of California Air Resources Board
> c/o Bank of America, Inter Branch to 0148
> Routing No. 0260-0959-3; Account No. 01482-80005
> Notice of Transfer: Accounting; Fax: (916) 322-9612
> Reference: *United States v. Hino Motors, Ltd. et al.*, CARB Case C00323

Defendants are responsible for any bank charges incurred for processing wire transfers, and for

replacing any checks due to a check bouncing or being lost in the mail.

b.   Penalties paid to CARB under this Consent Decree shall be deposited into

the Air Pollution Control Fund for the purpose of enhancing CARB's mobile source emissions

control program through additional certification review, in-use evaluation, real-world testing,

enforcement actions, and other CARB activities related to the control of air pollution.

13.     At the time of payment to CARB, Defendants shall send electronic notice that payment has been made to CARB by email in accordance with Section XV (Notices and Submissions).

14.     Defendants shall not deduct any penalties paid under this Consent Decree pursuant to this Section IV (Civil Penalty) or Section IX (Stipulated Penalties), or the accrued interest on such penalties, in calculating its federal, state, or local income tax.

## V.     APPROVAL OF SUBMISSIONS; U.S./EPA/CARB DECISION-MAKING

15.     For purposes of this Consent Decree, unless otherwise specified in this Consent Decree:

a.     with respect to any Submission, other obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants that concerns Section IV (Civil Penalty), Section VI (Compliance Requirements) except for Paragraph 22 (Administrative Recall Process), Section XVIII (Modification), or Section XIX (Termination), the United States, EPA, and CARB shall issue a joint decision concerning the Submission, other obligation, or force majeure claim;

b.     with respect to any Submission, other obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants regarding Section VII (Mitigation), EPA or the United States shall issue a decision concerning the Submission, other obligation, or force majeure claim;

c.     with respect to any other Submission, obligation that requires approval or decision by Plaintiffs, or force majeure claim of Defendants under this Consent Decree, the position of EPA or the United States, after consultation with CARB, shall control.

16.     Except as otherwise specified, after review of any Submission, EPA and/or CARB shall in writing: (i) approve the Submission; (ii) approve the Submission upon specified conditions; (iii) approve part of the Submission and disapprove the remainder; or (iv) disapprove the Submission. In the event of an approval upon specified conditions or a disapproval, in full or in part, of any portion of the Submission, if not already provided with the EPA and/or CARB written decision, upon the request of Defendants, EPA and/or CARB will provide in writing the reasons for such specified conditions or disapproval.

17.     If the Submission is approved pursuant to (i) in Paragraph 16 above, Defendants shall take all actions required by the Submission, in accordance with the schedules and requirements of the Submission, as approved. If the Submission is conditionally approved or approved only in part pursuant to (ii) or (iii) in Paragraph 16 above, Defendants shall, upon written direction from EPA and/or CARB, take all actions required by the Submission that EPA and/or CARB determine(s) are technically severable from any disapproved portions, subject to Defendants' right to dispute only the conditions that EPA and/or CARB specified or the disapproved portions, under Section XI (Dispute Resolution).

18.     If the Submission is disapproved, in whole or in part pursuant to (iii) or (iv) in Paragraph 16 above, Defendants shall, within 45 Days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Submission, or disapproved portion thereof, for approval, in accordance with Paragraph 16. If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with Paragraph 17.

19.     If a resubmitted Submission is disapproved, in whole or in part, EPA and/or CARB may again require Defendants to correct any deficiencies, in accordance with Paragraph 18; or EPA and/or CARB may itself/themselves correct any deficiencies, and

26

Defendants shall implement the Submission as modified by EPA and/or CARB, subject to

Defendants' right to invoke the dispute resolution procedures set forth in Section XI (Dispute

Resolution) and the right of EPA and/or CARB to seek stipulated penalties.

20.     Any stipulated penalties applicable to the original Submission, as provided in

Section IX (Stipulated Penalties), shall accrue during the 45-Day period or such other time as the

Parties agreed to in writing pursuant to Paragraph 18, but shall not be payable unless the

resubmission of the original Submission is untimely or is disapproved in whole or in part;

provided that, if EPA or the United States, in consultation with CARB, determines that the

original Submission was so deficient as to constitute a material breach of Defendants'

obligations under this Consent Decree, the stipulated penalties applicable to the original

submission shall be due and payable notwithstanding any subsequent resubmission. In the event

that EPA or the United States seeks stipulated penalties under this Paragraph, upon request of

Defendants, EPA or the United States will provide in writing the reasons for such a finding of

material deficiency, if not already provided with the EPA and/or CARB written decision.

## VI.   COMPLIANCE REQUIREMENTS

A.   <u>Engine Compliance</u>.

21.   <u>Establishment and Maintenance of Emission Modification and Extended
Warranty Programs</u>.

a.      As provided in this Section VI.A, Defendants shall establish and maintain

an Emission Modification Program for the J05E Recall Group and the J08E Recall Group which

requires Defendants to notify each Eligible Owner and Eligible Lessee about the applicable

Emission Modification for their Eligible Vehicle and enables owners and lessees to obtain an

Emission Modification for their Eligible Vehicle.

b.      As described and provided by Paragraph 27, Defendants shall make the Emission Modification available to all Eligible Owners and Eligible Lessees at no cost. Defendants shall ensure that no consumer payment or release of any Eligible Owner's or Eligible Lessee's rights or claims shall be required in exchange for performing the Emission Modification.

c.      Defendants shall establish and maintain extended warranty programs that are available at no cost, and shall ensure that no consumer payment or release of any rights or claims shall be required in exchange for providing the applicable warranties, as provided in Paragraphs 32-35 ("Extended Warranty Programs").

d.      As provided in Paragraph 38, Defendants shall make information regarding the Emission Modification and the Extended Warranty Programs available online on a publicly available website that provides vehicle-specific information searchable by VIN.

e.      The requirements outlined in this Paragraph shall continue in full force and effect after termination of the Consent Decree.

22.   Administrative Recall Process.

a.      Remedial Plans. Defendants shall submit to OTAQ and CARB Remedial Plans for the J05E Recall Group and the J08E Recall Group pursuant to the voluntary recall provisions of 40 C.F.R. Part 1068, Subpart F, and 13 C.C.R. §§ 2111−20. Each Remedial Plan shall contain the information required in 40 C.F.R. § 1068.510(a)(1−13) and 13 C.C.R. § 2114(a)(1−9), and a certification in the same form as the one required for semi-annual reports under Paragraph 66.

b.      Proposed Emission Modifications. As part of each Remedial Plan, Defendants shall submit to OTAQ and CARB proposed modifications, alterations, repairs,

corrections, adjustments, or other proposed changes ("Proposed Emission Modifications")
designed to bring the vehicles within the J05E Recall Group and the J08E Recall Group into
compliance with applicable emission standards.

      c.     All proposed Remedial Plans and Proposed Emission Modifications
submitted pursuant to Paragraphs 22.a and 22.b above are subject to review and approval by
OTAQ and CARB pursuant to the administrative recall process under 40 C.F.R. Part 1068,
Subpart F, and 13 C.C.R. §§ 2111−20.

      d.     All submissions to OTAQ and CARB in the administrative recall process
shall be subject to review and approval as specified in 40 C.F.R. Part 1068, Subpart F, and
13 C.C.R. §§ 2111−20, not under Section V (Approval of Submissions; U.S./EPA/CARB
Decision-Making) of this Consent Decree. Any disputes that arise in the administrative recall
process shall be resolved in accordance with 40 C.F.R. Part 1068, Subpart F, and 13 C.C.R.
§§ 2111−20, not under Section XI (Dispute Resolution) of this Consent Decree.

23.     <u>Consent Decree Recall Requirements</u>. The remaining Paragraphs in this Section,
below, specify additional requirements for the recall process. To the extent these Consent Decree
requirements conflict with the regulations, the Consent Decree requirements shall control.

24.     <u>Submission Deadlines</u>. Defendants shall submit each Remedial Plan required
under Paragraph 22 as soon as possible, but no later than eight months after the Date of Lodging.

25.     <u>Certification of No Defeat Devices or Undisclosed AECDs</u>. Defendants shall
certify in each Remedial Plan that the Proposed Emission Modification will not contain any
Defeat Device or undisclosed AECD.

26.     <u>Deadline for Obtaining Approval of Remedial Plans</u>. In the administrative recall
process, Defendants shall use their best efforts to obtain approval by OTAQ and CARB of each

applicable Remedial Plan as soon as possible. In the case that an applicable Remedial Plan submitted pursuant to Paragraphs 22–25 has not been approved by OTAQ and CARB 14 months from the Date of Lodging, Defendants shall be liable for stipulated penalties under Paragraphs 73 and 75.

27. <u>Availability of Approved Emission Modification</u>. Within 30 Days of approval of a Remedial Plan by EPA and CARB, Defendants shall make the Approved Emission Modification available to all Eligible Owners and Eligible Lessees at no cost, for 15 years after the Model Year of the Subject Vehicle or eight years after the approval of the applicable Approved Emission Modification, whichever is later. As long as any parts necessary for the Approved Emission Modification are available after these time periods, Defendants shall continue to make the Approved Emission Modification available to Eligible Owners and Eligible Lessees. Defendants shall ensure that no consumer payment or release of any Eligible Owner's or Eligible Lessee's rights or claims shall be required in exchange for performing the Approved Emission Modification.

28. For Eligible Vehicles registered in California, Defendants shall state in all notices sent to Eligible Owners or Eligible Lessees that the Approved Emission Modification is voluntary and not required for Eligible Owners or Eligible Lessees to register their Eligible Vehicles with the California DMV. Defendants shall not take any action to prevent Eligible Owners or Eligible Lessees from registering their Eligible Vehicles in California based on the Eligible Owner's or Eligible Lessee's decision not to receive the Approved Emission Modification.

29. <u>Grounds for Refusal to Apply the Modification to an Eligible Vehicle</u>. If an Eligible Vehicle has been altered with the use of any after-market emissions-related components,

parts, or software or the removal of any original emissions-related components, parts, or software, and such alteration(s) are likely to substantially affect the operation of the vehicle with an Approved Emission Modification or substantially impede installation of an Approved Emission Modification, then Defendants shall not be required to install an Approved Emission Modification on the Eligible Vehicle until the owner or lessee of such vehicle, at his or her expense, has reversed the alteration(s) such that an Approved Emission Modification may be installed and not be substantially affected. Any such vehicle shall be considered an "Ineligible Vehicle" until the owner or lessee has completed such reversal.

30. <u>Notice of Ineligibility</u>. If an Eligible Vehicle is presented for an Approved Emission Modification and the vehicle is, in fact, an Ineligible Vehicle, in accordance with Paragraph 29, Defendants shall provide written notice to the owner or lessee that the vehicle is ineligible for an Approved Emission Modification and the alterations that would be necessary to render it an Eligible Vehicle.

a. On a semi-annual basis, Defendants shall submit to EPA a list of Ineligible Vehicles for which Defendants have provided such an ineligibility notice and a copy of each ineligibility notice.

b. On a semi-annual basis, Defendants shall submit to CARB a list of Ineligible Vehicles, including VIN numbers, that were registered with the California DMV at the time that Defendants generated an ineligibility notice and a copy of every such ineligibility notice.

31. <u>Emission Modification Program Rate</u>. Within three years after EPA and CARB approve the applicable Remedial Plan (the "Recall Target Deadline"), Defendants shall ensure the installation of an Approved Emission Modification in at least 85% of Eligible Vehicles in the

31

J05E Recall Group, and 85% of the Eligible Vehicles in the J08E Recall Group, in the United States (the "National Recall Target Rate") and in California (the "California Recall Target Rate").

      a.    For purposes of this Paragraph, "National Credited Vehicles" shall be defined as the sum of:

      1)    the number of Eligible Vehicles nationwide in each group (the J05E Recall Group and the J08E Recall Group) that have received the Approved Emission Modification by the applicable Recall Target Deadline; and

      2)    the number of Subject Vehicles nationwide in each group (the J05E Recall Group and the J08E Recall Group) that are Ineligible Vehicles.

      b.    For purposes of this Paragraph, "California Credited Vehicles" shall be defined as the sum of:

      1)    the number of Eligible Vehicles in each group (the J05E Recall Group and the J08E Recall Group) registered with the California DMV that have received the Approved Emission Modification by the applicable Recall Target Deadline; and

      2)    the number of Subject Vehicles in each group (the J08E Recall Group and the J08E Recall Group) registered with the California DMV that are Ineligible Vehicles.

      c.    To assess Defendants' progress toward and achievement of the National Recall Target Rate for an Approved Emission Modification, the number of National Credited Vehicles in each group (the J05E Recall Group and the J08E Recall Group) shall be divided by the agreed-upon baseline total of National Eligible Vehicles for that group, which reflects

estimated attrition. For the J05E Recall Group that baseline total of National Eligible Vehicles is 12,717. For the J08E Recall Group that baseline total of National Eligible Vehicles is 30,738.

       d.      To assess Defendants' progress toward and achievement of the California Recall Target Rates for an Approved Emission Modification, the number of California Credited Vehicles for each group (the J05E Recall Group and the J08E Recall Group) shall be divided by the total number of California Eligible Vehicles for that group, as determined by the number of such vehicles registered with the California DMV on the date three years after the Emission Modification was approved by EPA and CARB.

      32.    <u>Extended Warranty for Modified Vehicles</u>. Defendants shall provide an Extended Warranty for each Eligible Vehicle that has received an Approved Emission Modification ("Modified Vehicle").

       a.      <u>Extended Warranty Coverage for Modified Vehicles</u>. The Extended Warranty for Modified Vehicles shall cover the parts listed in Appendix B, subject to standard limitations of which Defendants must notify Eligible Owners and Eligible Lessees. Those limitations may set forth exclusions such as accident, abuse, neglect, or installation of unexempted parts (as that term is described in 13 C.C.R. § 2036(d)(10)). The Extended Warranty is also subject to any pre-existing warranty provisions covering the Modified Vehicles that remain in effect during the Extended Warranty period specified in Paragraph 32.b. The Extended Warranty for Modified Vehicles shall cover the costs of all parts and labor needed to repair the parts listed in Appendix B, including diagnostic services and On-Board Diagnostic ("OBD") scans. Defendants shall not impose on consumers any fees or charges and shall pay any fees or charges imposed on consumers by Dealers related to the Extended Warranty service.

b.      <u>Extended Warranty Period for Modified Vehicles</u>. The Extended Warranty period for Modified Vehicles shall be five years from the date of installation of the applicable Approved Emission Modification and shall continue after termination of this Consent Decree under Section XIX (Termination). For any Eligible Vehicle that receives the Approved Emission Modification after the Recall Target Deadline, the Extended Warranty period shall apply, but in no event shall the Extended Warranty period extend past January 17, 2035.

33.      <u>Extended Warranty for Subject Vehicles</u>. No later than the Date of Lodging, Defendants shall provide an Extended Warranty for each Subject Vehicle.

a.      <u>Extended Warranty Coverage for Subject Vehicles</u>. The Extended Warranty for Subject Vehicles shall cover the parts listed in Appendix C, subject to standard limitations about which Defendants must notify all owners and lessees of Subject Vehicles. Those limitations may set forth exclusions like accident, abuse, neglect, or installation of unexempted parts (as that term is described in 13 C.C.R. § 2036(d)(10)). The Extended Warranty is also subject to any applicable existing warranty provisions covering the Subject Vehicles that will remain in effect during the Extended Warranty period specified in Appendix C. The Extended Warranty for Subject Vehicles shall cover the costs of all parts and labor needed to repair the items listed in Appendix C, including diagnostic services and OBD scans. Defendants shall not impose on consumers any fees or charges and shall pay any fees or charges imposed on consumers by Dealers related to the Extended Warranty service.

b.      <u>Extended Warranty Period for Subject Vehicles</u>. The warranty period for the Extended Warranty for Subject Vehicles is as provided in Appendix C, regardless of miles accumulated by the Subject Vehicle.

34

34. <u>Related Class Action Settlement</u>. Defendants may satisfy any warranty obligation under Paragraphs 32 and 33 by fulfilling an equivalent warranty obligation under the related Class Action Settlement or other warranty program. To the extent the Class Action Settlement or this Consent Decree contains terms for warranty coverage that are more favorable to Eligible Owners and Eligible Lessees, the more favorable warranty provisions shall control.

35. <u>Other Warranty-Related Terms and Conditions</u>.

a.     The extended warranties in Paragraphs 32 and 33 shall not modify, limit, or affect any state, local, or federal legal rights available to the Eligible Owners or Eligible Lessees. The warranties shall be subject to any remedies provided by state or federal laws, such as the Magnuson-Moss Warranty Act, that provide consumers with protections, including without limitation "Lemon Law" protections, with respect to warranties.

b.     In no event shall warranty coverage under the Extended Warranty for Modified Vehicles or the Extended Warranty for Subject Vehicles be subject to service writers' discretion.

c.     Neither the Extended Warranty for Modified Vehicles, the Extended Warranty for Subject Vehicles, and nor the installation of an Approved Emission Modification shall supersede or void any outstanding warranty.

36. <u>Subsequent Emission Modification Adjustments to Subject Engines</u>.

a.     <u>Prohibited Adjustments</u>. Defendants shall not participate in any service campaign to adjust or modify the Emission Control System in any Modified Vehicle in a manner that may impair, decrease, or degrade the emission control performance of the Subject Engine's Emission Control System, or to install a configuration or calibration that contains a Defeat

Device or an undisclosed AECD. Nothing in this Paragraph is intended to restrict Defendants' ability to perform normal course repairs or to service engines.

       b.    <u>Modifications Pursuant to NHTSA Safety Recall</u>.

        1)    Notwithstanding Paragraph 36.a, Defendants may implement any modification to the Subject Engines that has been reported to NHTSA as part of a safety recall in accordance with 49 C.F.R. Part 573 ("Part 573 Report").

        2)    On the day of submission to NHTSA of any Part 573 Report, Defendants shall send written notification to EPA and CARB that Defendants intend to implement a modification pursuant to a safety recall and attach a copy of the Part 573 Report to the notification.

        3)    No later than 90 Days after submitting the Part 573 Report to EPA and CARB, Defendants shall submit a follow-up notification to EPA and CARB that indicates whether the safety-related modification includes an Emission Control System- or OBD System-related calibration or hardware change to the Approved Emission Modification. If the safety-related modification includes an Emission Control System- or OBD System-related calibration or hardware change, then Defendants' follow-up notification to EPA and CARB shall also provide: (i) a description of the specific modifications, alterations, repairs, corrections, adjustments, or other changes to be made to the vehicles; and (ii) a description of the safety-related modification's expected effect on the performance or operation of the vehicles' Emission Control System and OBD System. For OBD-related modifications, Defendants' follow up notification shall also provide the information required by 13 C.C.R. § 1971.5(e). Defendants' follow up notification shall include the required certification specified by Paragraph 66.

36

4)     If EPA and CARB subsequently notify Defendants that the safety-related modification is not compliant with applicable environmental laws or regulations, Defendants shall, within 60 Days of such notification, either: (i) submit to EPA and CARB for review and approval under Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making) a proposed plan and schedule for addressing the noncompliance identified by EPA and CARB (a "Response Plan"); or (ii) challenge EPA's and CARB's determination in accordance with Section XI (Dispute Resolution). If Defendants believe that the noncompliance cannot be addressed without jeopardizing compliance with NHTSA requirements, Defendants may submit a proposed Response Plan that provides for "no further action" to be taken to remedy the noncompliance, provided that Defendants set forth all the bases for this belief, for consideration by EPA and CARB.

5)     Upon receipt of written approval of a Response Plan by EPA and CARB, Defendants shall implement the Response Plan in accordance with the approved schedule. If EPA and CARB fail to make a determination within 60 Days of receipt of the Response Plan, Defendants may, at their discretion, consider the proposal to be denied for purposes of invoking Dispute Resolution pursuant to Section XI (Dispute Resolution) of this Consent Decree.

37.    <u>Sale and Export Restrictions</u>.

a.     On January 10, 2025, EPA voided *ab initio* the COCs for the Subject Engines. Therefore, Defendants are prohibited from selling, offering to sell, introducing into commerce, or importing, or causing any of the foregoing with respect to, any Subject Engine, including any Subject Engine installed in any vehicle or piece of nonroad equipment, except for any replacement engines, as defined in 40 C.F.R. § 1068.240. Additionally, Defendants shall not

export any Subject Engines, including any Subject Engine installed in any vehicle or piece of nonroad equipment.

   b.  After the date of approval of an applicable Approved Emission Modification, Defendants shall instruct its Dealers not to: (i) sell or cause to be sold, resell or cause to be resold, lease or cause to be leased, import, or otherwise introduce into commerce, any Eligible Vehicle, unless it has received the applicable Approved Emission Modification; or (ii) export from the United States to another country, any Eligible Vehicle, unless it has received the applicable Approved Emission Modification.

   c.  No later than 45 Days from the date of approval of an Approved Emission Modification, Defendants shall use best efforts to ensure that its Dealers do not (i) sell or cause to be sold, resell or cause to be resold, lease or cause to be leased, or introduce into commerce, any Eligible Vehicle, unless the Eligible Vehicle has received an applicable Approved Emission Modification; or (ii) export from the United States to another country, any Eligible Vehicle, unless the Eligible Vehicle has received an applicable Approved Emission Modification.

  38. <u>Online Access to Information</u>.

   a.  By no later than 30 Days from the date of approval of an applicable Approved Emission Modification, Defendants will make information regarding any Approved Emission Modification available online on a publicly available website for the Subject Vehicles that provides vehicle-specific information searchable by VIN ("Hino Recall Website"). Defendants shall ensure that the Hino Recall Website contains updated information regarding (i) vehicle-specific information about the availability of an Approved Emission Modification; (ii) vehicle-specific status indication on whether or not the applicable Approved Emission Modification has been installed; (iii) a description of the Extended Warranty for Modified

38

Vehicles; and (iv) a viewable and downloadable copy of the pertinent disclosures provided to consumers as part of the administrative recall process.

      b.     By no later than 30 Days after the Date of Lodging, Defendants shall ensure that the Hino Recall Website contains updated information about the Extended Warranty for Subject Vehicles, including vehicle-specific information by VIN concerning the availability and coverage of the Extended Warranty for Subject Vehicles.

      c.     For at least 10 years after the Effective Date, Defendants shall ensure that updated information referenced in Paragraphs 38.a–b is available on their Hino Recall Website or on a similarly accessible website that shall be accessible free of charge to owners, lessees, and prospective purchasers. This requirement shall continue after termination of the Consent Decree under Section XIX (Termination).

      B.     <u>Corporate Compliance</u>.

    39.     In 2019, HML ceased seeking Certificates of Conformity from EPA and Executive Orders from CARB for its diesel engines intended for the United States and/or California. At the time of lodging of this Consent Decree, HML has represented that it will no longer seek to certify internal combustion engines of any kind (including, without limitation, engines fueled by diesel or gasoline) for the U.S. or California market for at least five years from the Effective Date. Nevertheless, during that time, Defendants expect they will conduct various activities in the United States and California related to the Subject Engines, including among other things the conduct of recalls and emission modifications, work under extended warranties, and compliance with other requirements of consent decrees, settlement agreements, and other resolutions of federal, state, and private class action claims.

40.     Accordingly, Defendants have taken and shall continue to take measures to reform and restructure their organizations in order to promote compliance with U.S. Environmental Law (as defined in Paragraph 9.qqqq). Defendants shall maintain and enhance these measures as required under this Consent Decree.

41.     Defendants shall implement the corporate compliance provisions of this Consent Decree, in conjunction with their existing corporate and compliance management activities, to advance the goals of:

        a.     preventing violations of U.S. Environmental Law;

        b.     detecting any violations of U.S. Environmental Law that do occur; and

        c.     responding to any violations, or environmental compliance problems that could result in violations, of U.S. Environmental Law, including modifying policies, processes, controls, or any other activities that allowed such violations or problems to arise, and self-disclosing as appropriate, to the United States, EPA, CARB, and the California Attorney General.

42.     To meet the goals of this Section and ensure compliance with United States and California laws and regulations governing vehicle emissions, Defendants have designed and will implement the five corporate compliance measures described in Paragraphs 43-47 below. In addition, Defendants will report to the United States, EPA, and CARB on a yearly basis and with reasonable specificity on their implementation of these compliance measures, as further described in Paragraph 49.

43.    <u>Corporate Governance and Resourcing</u>.

a.    <u>Compliance Structure and Organizational Separation of Development,</u>
<u>Certification, and Audit Functions</u>. Defendants reorganized their corporate structure to
organizationally separate employees involved in U.S. engine certification, U.S. product
development, and internal corporate audit and to support the organizational independence of the
internal audit function.

1)    Specifically:

(a)    Within HML, the product development function reports to
the Chief Technology Officer, while the Regulation and Certification Division ("RCD"), which
manages, supervises, and conducts certification testing, reports to the Chief Quality Officer.

(b)    Within HMM, the Vehicle Regulatory Compliance Liaison
("VRCL") group reports to the President of HMM.

(c)    HML's Internal Audit Division, whose scope of
responsibilities covers all of the Defendants, reports directly to HML's Chief Executive Officer
("CEO") and provides periodic reports, at least annually, to members of the Board of Auditors
and the Board of Directors.

2)    Defendants shall continue to implement an organizational structure
in which the U.S. engine certification, U.S. product development, and internal corporate audit
functions are organizationally separate, with reporting lines to different leaders in senior
management.

3)    HML's Internal Audit Division shall report to the CEO, and at
least semi-annually provide reports to the Board of Directors and/or Board of Auditors, or any
similar successor body, and/or applicable committees of each such body.

41

b.     Compliance Resourcing.

1)     HML has increased its compliance resources, establishing Chief Compliance Officer ("CCO") and Deputy Chief Compliance Officer positions, creating a compliance function known as the Compliance Promotion Division ("CPD"), and creating a "Compliance Committee" chaired by the President to monitor, review, and make recommendations regarding HML's compliance program, for which the President is responsible. HML shall continue to maintain a compliance function led by a senior executive and containing both general and technical compliance teams, and shall continue to convene a Compliance Committee that is chaired by a senior executive and includes board members.

2)     HMM and HMS shall also maintain Compliance Committees, which shall provide to the compliance function at HML updates on significant compliance activities and developments related to compliance with U.S. Environmental Law.

3)     Defendants shall maintain adequate staffing levels for employees in their compliance, engine certification, and internal corporate audit functions with responsibilities for compliance with U.S. Environmental Law. The adequacy of staffing shall be evaluated on an annual basis by the External Compliance Consultant (defined in Paragraph 49.a), and Defendants shall describe any recommendations from the External Compliance Consultant in their annual report and shall address those recommendations by the time of the next report, as provided in Paragraph 49.

44.     <u>Compliance Policies and Procedures</u>.

a.     HML has developed policies and practices in the areas of integrity, business ethics, and environmental compliance. HML's corporate philosophy and foundational compliance documents are contained in the "Hino Way," which includes HML's global Credo, Sustainability Policy, and Code of Conduct. The Credo describes Hino's three core principles: integrity, contribution, and empathy. HML's Sustainability Policy lists compliance, safety, and environmental sustainability as three of the twelve key bases for Defendants' corporate activities. The Code of Conduct, which emphasizes "tadashii-shigoto" or "do the right thing," reinforces compliance as a top priority, and encourages employees to "speak up" by directing them to approach supervisors or use the "Consulting Desk" or the global or local reporting hotlines to report compliance problems, including but not limited to issues of compliance with U.S. Environmental Law.

b.     Defendants shall maintain and enhance policies and practices in the areas of integrity, business ethics, and environmental compliance by continuing to maintain a code of conduct and/or other foundational corporate compliance policies that apply to Defendants' employees, include integrity and compliance as core values of Defendants' organizations, and require employees to conduct business in a compliant manner. Defendants shall make these policies available on a publicly available global website in multiple languages, and shall provide descriptions, and any related directions for how to comply with the policies, to Defendants' employees, including on each Defendant's intranet or other internal online portal.

c.     Defendants shall conduct comprehensive compliance training, at least once per year, related to their business ethics and integrity program for Defendants' employees.

43

d.      At least annually, commencing on December 31 of the year this Decree is entered, Defendants shall develop and annually update written standards focused on compliance with U.S. Environmental Law (the "Compliance Standards"). The Compliance Standards shall relate to, among other topics, air pollutants, such as greenhouse gases, AECD disclosure and assessment requirements, and OBD requirements, in addition to quality assurance standards and work standards as necessary for the Emission Modifications required in Section VI.A (Engine Compliance). Defendants shall disseminate their new and updated respective Compliance Standards to employees with responsibility for U.S. product development, U.S. certification, internal corporate auditing, and/or environmental compliance related to U.S. vehicle emissions.

45.      <u>Culture of Integrity and Compliance</u>.

a.      <u>Tone at the Top and Communication</u>. Defendants have established and shall continue to implement enhanced internal communication measures focused on compliance with Company policies and U.S. Environmental Law, including (i) sending periodic written messages from senior leaders, reminding employees of the importance of compliance and of speaking up (*i.e.*, whistleblowing) to raise concerns without the risk of retaliation; (ii) having senior leaders conduct dialogue sessions with employees at least semi-annually; (iii) establishing the Learning Center for Working in the Right Way as an educational resource for HML employees; and (iv) conducting periodic Compliance Committee meetings. Defendants shall continue to communicate with employees regarding the importance of compliance with U.S. Environmental Law and the importance of speaking up to raise concerns without the risk of retaliation.

b.      <u>Whistleblower System</u>. Defendants shall maintain and implement web-based and phone-based ethics and compliance reporting systems ("Whistleblower Systems") to

44

facilitate and promote the reporting by employees to management of violations and other environmental compliance issues, including compliance with applicable United States laws and regulations regarding vehicle emissions, without the risk of retaliation. Defendants shall ensure that employees have the ability to report environmental compliance issues 24 hours per day, 7 days per week, and to report anonymously, where permitted by local law.

1) Defendants shall continue to prohibit retaliation against employees who raise concerns about adherence to, or who report violations of, U.S. environmental compliance requirements.

2) Defendants shall continue to publicize the availability of the Whistleblower Systems to their employees. Defendants shall require general compliance training, at least once per year, for Defendants' employees to encourage such employees to report issues concerning compliance with U.S. Environmental Law through Defendants' Whistleblower Systems, without fear of retaliation.

c. <u>Compliance Incentives and Disincentives</u>. Defendants shall implement programs designed to provide incentives for employees to comply with U.S. Environmental Law and disincentives for them to violate such laws and regulations ("Compliance Incentive Program"). This Compliance Incentive Program shall include:

1) <u>Employee Evaluations and Compensation</u>. Defendants shall include compliance as a factor in their annual evaluations of all Defendants' employees with responsibilities in areas related to U.S. Environmental Law. Through this Compliance Incentive Program, Defendants shall ensure that failure by an employee to follow such laws and regulations will negatively impact an employee's salary, bonus, promotions, and/or leadership potential within each organization.

45

2)   <u>Disciplinary Processes</u>. Defendants shall subject their employees who fail to comply with U.S. Environmental Law to appropriate disciplinary measures under applicable internal employee policies and as permitted by local law. Upon substantiation of an instance of noncompliance, Defendants shall review the matter and take disciplinary measures, as permitted by local law, designed to prevent similar incidents in the future. These measures shall be imposed according to Defendants' disciplinary procedures which contemplate disciplinary options up to and including separation from the company.

46.   <u>Product Emissions Compliance and Regulatory Affairs</u>.

a.   <u>Technical Compliance Training</u>. Defendants shall continue to implement periodic Technical Compliance Training on U.S. Environmental Law for employees with responsibility for U.S. product development, U.S. certification, internal corporate auditing, and/or environmental compliance related to vehicle emissions ("Required Trainees"). Training shall address, in the first year, the following topics:  (i) mandatory training regarding regulatory requirements applicable to defeat devices and AECDs (40 C.F.R. § 1068.101(b)(2)); (ii) mandatory OBD training; (iii) mandatory vehicle greenhouse gas training; (iv) mandatory tampering awareness training (40 C.F.R. § 1068.101(b)(1)); (v) mandatory penalties and fines training for U.S. Environmental Law. In subsequent years, Defendants shall continue to conduct annual Technical Compliance Training and shall identify topics based on the Defendants' risk assessment. In identifying annual training topics, Defendants shall provide training on the topics enumerated above in this paragraph at least every other year. All training shall be conducted by qualified employees or third parties with applicable expertise and experience. Defendants shall make the initial training available to the Required Trainees within eight months of the Effective

46

Date and shall require the Required Trainees to complete the training within 12 months of the Effective Date.

        b.     <u>Regulatory Information Management</u>. Defendants shall enhance their activities for identifying, interpreting, and disseminating information internally regarding current, new, and emerging U.S. Environmental Law.

        c.     <u>Third-Party Management (Suppliers)</u>. HML and HMM shall continue to distribute their respective "Supplier Quality Assurance Manuals" or "SQAMs" to all of HML and HMM's suppliers of components for Hino vehicles sold in the United States (including California), including such suppliers located in Japan and countries outside the United States. The relevant SQAM shall be made available in one or more language(s) understood by officers, employees, and agents of HML and HMM's components suppliers for Hino vehicles. HML and HMM shall revise and update their respective SQAMs as needed to keep them accurate, complete, applicable, and current. Each SQAM shall include a description of Hino's expectation that each component supplier establishes and implements a quality fraud prevention system.

        47.    <u>Risk Management and Auditing</u>.

        a.     <u>Internal Auditing</u>. In addition to the reporting and other requirements above, Defendants' Internal Audit Division or comparable audit function shall on an annual basis conduct at least one risk-based Technical Compliance Audit related to U.S. product development and/or U.S. vehicle or engine certification activities to audit for compliance with U.S. Environmental Law. These audits shall be conducted by individuals who (i) have applicable technical training and expertise; (ii) understand the importance of, and have consistently maintained and honored, the separation of the internal audit function from the U.S. engine certification and U.S. product development functions, as provided in this Section above; and (iii)

have a demonstrated ability to consistently meet high standards of ethics and professional responsibility.

      b.    <u>Risk Assessment</u>.

      1)    Defendants, through HML's Chief Risk Officer and Risk Management Committee, or comparable functions, shall develop, implement, and enhance an internal risk management system that includes an assessment of technical compliance risks relating to U.S. Environmental Law.

      2)    Defendants shall establish and maintain a risk assessment process that, at least annually, identifies compliance risks relating to U.S. Environmental Law, and develops and implements measures to address such risks and a schedule for completion of such measures.

48.    <u>Implementation Time Frame</u>. Defendants shall continue to implement the requirements of this Section VI.B (Corporate Compliance) until termination of this Consent Decree.

49.    <u>Annual Compliance Testing and Reporting</u>.

      a.    <u>External Compliance Consultant</u>. Defendants shall engage an external compliance consultant ("External Compliance Consultant") to review and test Defendants' implementation of the corporate compliance measures required under this Section VI.B, including, at a minimum, corporate governance and resourcing (Paragraph 43), Whistleblower Systems (Paragraph 45.b), Technical Compliance Training (Paragraph 46.a), and risk management and auditing (Paragraph 47). If at any time during their review or testing, the External Compliance Consultant concludes that additional review and/or testing is necessary to

48

meet the goals of this Section, then Defendants shall cooperate and facilitate such additional review and/or testing.

        b.    <u>Reporting Requirements for Corporate Compliance</u>. Defendants shall submit an annual report to the United States, EPA, and CARB regarding their compliance with Paragraphs 43–47 ("Corporate Compliance Report"). The first Corporate Compliance Report shall be submitted within one year after the Effective Date and annually thereafter. In each annual report, Defendants shall provide a written description of:

        1)    the corporate compliance measures that Defendants have implemented pursuant to Section VI.B (Corporate Compliance);

        2)    in summary form, any violations of this Consent Decree related to the corporate compliance obligations that occurred during the preceding year. The summary shall include: (1) the date(s) of the violation; (2) a description of the violation; (3) an explanation of the violation's likely cause; (4) a description of the steps taken to prevent, remedy, or minimize the violation; and (5) for violations Defendants are required to report under Paragraphs 49.b and 65.g, a list of violations previously reported and the date the notice of violation was sent. If no violations occurred during the reporting period, Defendants shall submit a statement that no violations occurred;

        3)    any material changes in Defendants' approach to the corporate compliance measures provided in Section VI.B (Corporate Compliance);

        4)    a description of any significant problems encountered in implementing the corporate compliance measures required under Section VI.B (Corporate Compliance);

5)      a description of the steps Defendants have taken to remedy these problems; and

6)      a description of the External Compliance Consultant's review and testing and any recommendations from the External Compliance Consultant for further enhancements to Defendants' implementation of the corporate compliance measures required under Section VI.B (Corporate Compliance).

c.      Corporate Compliance Plan and Annual Reviews. Within 60 Days of the Effective Date, Defendants shall submit a written proposed compliance work plan ("Corporate Compliance Plan") to the United States, EPA, and CARB for review under Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making). If the United States, EPA, and CARB have not provided any feedback (e.g., approval, denial, approval with conditions, or partial approval) within 60 Days after receipt of the proposed plan, the Corporate Compliance Plan will be deemed approved. At least annually, Defendants shall submit a revised and updated proposed Corporate Compliance Plan, subject to the same approval process as the original plan.

d.      Meetings During the Term. If requested by the United States, EPA, and/or CARB, representatives from Defendants shall meet with the United States, EPA, and/or CARB within 30 Days after providing each report to discuss the report and any feedback from the United States, EPA, and/or CARB.

50.      Future Engine Certification and Independent Compliance Auditor. Defendants agree that, for at least five years after the Effective Date of this Decree, they shall not apply for new EPA COCs or CARB Executive Orders for internal combustion engines (including, without limitation, engines fueled by diesel or gasoline) intended for sale, lease, or distribution in the United States or California. If, at any time before termination of this Consent Decree, HML

resumes seeking EPA COCs or CARB Executive Orders for any internal combustion engines subject to United States or California environmental law or regulations, respectively, HML must take the following actions:

      a.    Defendants shall submit to the United States, EPA, and CARB a written notice of their intent to resume the submission of applications for EPA COCs or California Executive Orders for internal combustion engines for the U.S. market 180 Days prior to resuming the submission of such applications.

      b.    Together with the notice required under the previous subparagraph, Defendants shall submit a proposed supplemental compliance plan ("Supplemental Compliance Plan") to the United States, EPA, and CARB for their review and approval. The Supplemental Compliance Plan shall include:

      1)    provisions and a schedule for the retention and oversight of an Independent Compliance Auditor, as provided in Paragraph 50.f below, until the termination of the Consent Decree; and

      2)    other provisions designed to ensure compliance with U.S. Environmental Law.

      c.    The proposed Supplemental Compliance Plan shall be reviewed and approved under Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making); provided that, if the United States, EPA, or CARB do not provide any feedback (e.g., approval, disapproval, conditional approval, or partial approval) on the proposed Supplemental Compliance Plan within 60 Days after receipt of the proposed plan, the Supplemental Compliance Plan will be deemed approved.

      d.     Defendants shall comply with the approved Supplemental Compliance Plan, subject to Sections XI (Dispute Resolution) and X (Force Majeure), if applicable.

      e.     This Paragraph 50 applies to engine certification, not vehicle certification pursuant to 40 C.F.R. Part 1037.

      f.     <u>Independent Compliance Auditor</u>.

      1)     If Defendants recommence applications for U.S. COCs or California Executive Orders for internal combustion engines (including, without limitation, engines fueled by diesel or gasoline) intended for sale, lease, or other introduction into commerce in the United States before termination of this Consent Decree, Defendants shall retain, until the termination of the Consent Decree and at their expense, an independent third-party compliance auditor ("Independent Compliance Auditor" or "Auditor") to conduct a comprehensive verification of Defendants' compliance with U.S. Environmental Law. Defendants shall require that this Auditor act independently and objectively when performing all activities related to assessing Defendants' compliance with U.S. Environmental Law.

      2)     Defendants shall provide the Auditor with full access to their U.S. product development, U.S. engine certification, internal corporate auditing, and other related offices and components, and shall provide or otherwise make available any necessary personnel, documents, and training needed for the Auditor to fully perform all verification activities.

      3)     At least 90 Days before recommencing applications for COCs for internal combustion engines, Defendants shall submit to the United States, EPA, and CARB the name and qualifications of a proposed Auditor that Defendants certify meets the following conditions:

(a)     The Auditor has demonstrated experience in applicable U.S. Environmental Law.

(b)     The Auditor and their personnel have not conducted research, development, design, construction, financial, engineering, legal, consulting nor other advisory services for the Defendants within the last three years. However, an Auditor with personnel who, before working for the Auditor's firm, conducted research, development, design, construction, or consulting services for Defendants (as an employee or contractor) may meet the requirements of independence by ensuring such personnel do not participate on, manage, or advise the audit team in this case.

(c)     The Auditor was not involved in the development of Defendants' U.S. or California engine certification applications, related testing or data generation or presentation, or any other activities giving rise to the violations alleged in this case.

(d)     The Auditor and its personnel shall not provide any other commercial, business or voluntary services to the Defendants for a period of at least three years following the Auditor's submittal of their final report ("Supplemental Compliance Report").

(e)     Defendants shall not provide future employment to any of the Auditor's personnel who managed, conducted or otherwise participated in the Compliance Audit for a period of at least three years following the Auditor's submission of its Supplemental Compliance Report.

4)     Within 30 Days of receiving the proposed Auditor from Defendants, EPA will notify Defendants in writing whether it approves of the proposed Auditor. Within 10 Days of EPA approval, Defendants shall retain such Auditor to perform the verification activities set forth in Paragraphs 50.f.1. Defendants shall ensure that all verification

personnel who conduct or otherwise participate in audit activities shall certify that they satisfy the conditions set forth in Paragraph 50.f.3 above before receiving any payment from Defendants.

        5)      If EPA rejects a proposed Auditor, within 15 Days of receipt of EPA's notification Defendants shall submit to EPA for approval another proposed Auditor that meets the qualifications set forth in Paragraph 50.f.3, restarting the timing requirements set forth in Paragraph 50.f.4. EPA will review the proposed replacement in accordance with Paragraph 50.f.3-5. Nothing in this Paragraph 50 precludes the United States from assessing stipulated penalties for missed audit deadlines associated with the need to replace an Auditor unless Defendants successfully assert that the inability of the Auditor to perform the verification activities as required was a Force Majeure event in accordance with Section X (Force Majeure).

        6)      Defendants shall ensure that their contract with the Auditor explicitly requires the Auditor to perform the activities that EPA will review to assess Defendants' compliance with U.S. Environmental Law, as provided in the EPA-approved Supplemental Compliance Plan.

        7)      According to the schedule set forth in the approved Supplemental Compliance Plan, the Auditor shall submit a Supplemental Compliance Report to the United States, EPA, CARB, and Defendants that meets these requirements:

        (a)      The Auditor shall not share any draft or preliminary audit findings or reports with the Defendants in any format (electronic, paper, or verbal).

        (b)      The Auditor shall conduct no post-audit oral or written communications with Defendants except to request additional audit-related data or information.

(c)      The Auditor shall not share its conclusions with Defendants until the Auditor submits its Supplemental Compliance Report to the United States, EPA, and CARB.

(d)      The Supplemental Compliance Report shall include all findings, conclusions, monitoring results and other observations of the Auditor.

(e)      The Auditor shall provide copies of all documents reviewed and identify all of Defendants' personnel interviewed in support of the Supplemental Compliance Report.

(f)      The Auditor shall include in the final submitted Supplemental Compliance Report a certification that Defendants have remained in compliance with all of the conditions set forth in Paragraph 50.f above, and shall continue to follow these conditions until three years after the final Supplemental Compliance Report is completed.

(g)      The Supplemental Compliance Report, or any information developed or findings of the Auditor, shall not be subject to any privilege or protection, except as provided under Section XII (Information Collection and Retention).

8)      By the deadline set forth in the approved Supplemental Compliance Plan, Defendants shall submit to EPA a response to all findings, conclusions and observations set forth in the Supplemental Compliance Report, with an expeditious schedule for correction. Defendants shall also describe each completed or proposed action to correct each deficiency identified in the submitted Supplemental Compliance Report, including the date(s) that such corrections occurred or are scheduled to occur.

9)      The United States, EPA, and CARB may rely on the final Supplemental Compliance Report to determine whether Defendants have complied with U.S.

55

Environmental Law. However, the United States, EPA, and CARB shall not be bound by the

Supplemental Compliance Report. If EPA or CARB, where applicable, determines that

Defendants are in violation of any requirement of U.S. Environmental Law or this Consent

Decree, Defendants shall be liable for applicable stipulated penalties for violations of this

Consent Decree to the United States and/or CARB, pursuant to Section IX (Stipulated Penalties),

regardless of the Supplemental Compliance Report.

## VII.   MITIGATION

51.    U.S. Mitigation Program. As set forth in Paragraphs 53–60, below, Defendants

shall implement a program to reduce emissions from locomotives and marine vessels ("U.S.

Mitigation Program"). Through this program Defendants shall mitigate no less than 41,941 tons

of oxides of nitrogen ("NOx"), 376 tons of particulate matter ("PM"), 6,199 tons of carbon

dioxide ("$CO_2$"), and 135 tons of nitrous oxide ("$N_2O$"). For purposes of mitigating $N_2O$

emissions, Defendants may instead choose to mitigate $CO_2$ emissions at a ratio of 298:1

($CO_2$:$N_2O$).

52.    Defendants' implementation of the U.S. Mitigation Program, in accordance with

this Consent Decree, will be deemed to fully mitigate the total lifetime excess emissions from the

Subject Engines in the United States, excluding California, as claimed by the United States.

53.    No later than 30 Days from the Date of Lodging, Defendants shall submit for

EPA review and approval a plan for the implementation of the U.S. Mitigation Program

("Mitigation Implementation Plan"), including: a list of projects to be completed and the

projects' locations; the expected emissions reductions from each project and the calculation

methodology used for such estimate; and the expected timeline to complete each project.

Defendants may, but are not required to, begin implementation of the U.S. Mitigation Program

prior to receiving EPA approval of the Mitigation Implementation Plan. Defendants bear all risks that, should they implement Mitigation Projects prior to receiving EPA approval of the Mitigation Implementation Plan, EPA might not ultimately approve the project(s) and Defendants may not receive credit for the project.

54.     If EPA fails to make a determination about Defendants' proposal within 90 Days of receipt, Defendants may, at their discretion, consider the proposed Mitigation Implementation Plan to be denied for the purpose of invoking Dispute Resolution pursuant to Section XI (Dispute Resolution).

55.     The U.S. Mitigation Program shall be comprised of Mitigation Projects meeting the criteria set forth in Paragraphs 56 and 57. Defendants shall complete the U.S. Mitigation Program by no later than five years from the Effective Date of the Consent Decree.

56.     <u>Types of Mitigation Projects</u>. Subject to amendment as provided in Paragraph 58, the U.S. Mitigation Program shall include: seven Switch Locomotive Projects, 15 Line-Haul Locomotive Projects, 138 Switch Locomotive Idle Reduction Projects, and 14 Marine Projects.

a.     For purposes of this Section VII (Mitigation), "repower" means (i) removing existing unregulated, Tier 0, Tier 0+, or Tier 1 engines on a locomotive or marine vessel and installing new engines certified to EPA Tier 4 or more stringent emission standards under 40 C.F.R. § 1033.101 for locomotives or 40 C.F.R. Part 1042, Subpart B for marine engines; and (ii) permanently rendering the removed engines incapable of operation. For purposes of this Section, "replacement" means: (i) replacing an existing locomotive or marine vessel containing unregulated, Tier 0, Tier 0+, or Tier 1 engines by funding engines certified to EPA Tier 4 or more stringent EPA emission standards for a new locomotive or marine vessel; and (ii) permanently rendering the engines of the replaced locomotive or marine vessel incapable

57

of operation. For purposes of this Section, "replacement" may involve replacing more than one existing, qualifying locomotive or marine vessel with the same or fewer number of new locomotives or marine vessels.

   b. <u>Switch Locomotive Projects</u>. For each Switch Locomotive Project, Defendants shall complete and fund in whole the repowering or replacement of an unregulated, Tier 0, Tier 0+, or Tier 1 switch locomotive (as identified in 40 C.F.R. § 1033.101). "Switch locomotive" means a locomotive used in freight yards to assemble and disassemble trains, or used for short hauls of small trains, powered by an engine with a maximum rated power (or a combination of engines having a total rated power) of 2,300 horsepower or less, as provided under 40 C.F.R. § 1033.901. Each Switch Locomotive Project shall use a new engine that is certified to EPA Tier 4 or more stringent locomotive emission standards, under 40 C.F.R. § 1033.101.

   c. <u>Line-Haul Locomotive Projects</u>. For each Line-Haul Locomotive Project, Defendants shall complete and fund in whole the repowering or replacement of an unregulated, Tier 0, Tier 0+, or Tier 1 line-haul locomotive as identified in 40 C.F.R. § 1033.101. "Line-haul locomotive" means a locomotive that does not meet the definition of switch locomotive in 40 C.F.R. § 1033.901. Each Line-Haul Locomotive Project shall utilize a new engine that is certified to EPA Tier 4 or more stringent locomotive emission standards, under 40 C.F.R. § 1033.101.

   d. <u>Switch Locomotive Idle Reduction Projects</u>. For each Switch Locomotive Idle Reduction Project, Defendants shall complete and fund in whole a project that results in reduced idling time, and therefore reduced fuel usage and reduced emissions of NOx, PM, and $CO_2$, from switch locomotives. Each Switch Locomotive Idle Reduction Project must include

58

outfitting a switch locomotive with an Automatic Engine Shutdown / Startup ("AESS") system that relies on zero-emission auxiliary power. Locomotives that already have an AESS system installed, or that are otherwise part of the U.S. Mitigation Program as a Switch Locomotive Project, are not eligible to be a Switch Locomotive Idle Reduction Project.

        e.      <u>Marine Projects</u>. For each Marine Project, Defendants shall complete and fund in whole the repowering or replacement of an unregulated, Tier 0, or Tier 0+ engine on a marine vessel used as a tugboat, towboat, or dredge. 40 C.F.R. § 1042, Subpart B. Each Marine Project shall use a new engine that is certified to EPA Tier 4 or more stringent marine emission standards, under 40 C.F.R. § 1042, Subpart B.

      57.    <u>Mitigation Project Selection Criteria</u>.

        a.      <u>Geographic Diversity</u>. In selecting Mitigation Projects, Defendants shall use best efforts to mitigate emissions in geographically diverse locations across the United States (excluding California) in quantities roughly proportional to the estimated number of violative Subject Engines in each location, based on the most accurate data reasonably available to Defendants.

        b.      <u>Environmental Impact</u>. In selecting Mitigation Projects, Defendants shall use best efforts to select and implement Mitigation Projects in a manner that takes into consideration areas disproportionately burdened by adverse human health and environmental impacts, identified based on a combination of environmental and socioeconomic indicators, including, but not limited to, areas identified using mapping and screening tools such as EPA's "EJScreen" or the Council on Environmental Quality's Climate and Economic Justice Screening Tool ("CEJST"), and considering indicators related to air quality.

b.      Target Locomotives. In selecting Line-Haul Locomotive Projects and Switch Locomotive Projects, Defendants shall prioritize the repowering or replacement of unregulated, Tier 0, Tier 0+, and Tier 1 locomotives, in that order of priority.

c.      Target Marine Engines. In selecting Marine Projects, Defendants shall prioritize the repowering or replacement of unregulated, Tier 0, and Tier 0+ marine engines, in that order of priority.

58.      Amendments to the Mitigation Implementation Plan.

a.      At any time, Defendants may propose a modification of the U.S. Mitigation Program by submitting an amended Mitigation Implementation Plan that adds and/or removes one or more Mitigation Project(s) from the program. Any such proposal shall include an estimate of the expected total NOx, PM, and $CO_2$ emission reductions from the addition or removal of such Mitigation Projects and the methodology used to derive the estimate. Any such modification of the U.S. Mitigation Program shall result in NOx, PM, and $CO_2$ emission reductions greater than or equal to the tons of emissions to be mitigated, as provided in Paragraph 51. Any proposal submitted by Defendants pursuant to this Paragraph shall be subject to review and approval by EPA in accordance with Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making). Any modification of the Mitigation Implementation Plan shall not extend the five-year timeline for completion of the U.S. Mitigation Program.

a.      If EPA fails to make a determination about Defendants' proposed changes within 90 Days of receipt, Defendants may, at their discretion, consider the proposed changes to be denied for the purpose of invoking Dispute Resolution pursuant to Section XI (Dispute Resolution).

b.      Upon approval, conditional approval, or partial approval by the United

States, the amended Mitigation Implementation Plan shall supersede the original EPA-approved

Mitigation Implementation Plan and shall become enforceable under this Consent Decree.

59.     <u>Semi-Annual Reporting</u>. Defendants shall include updates on the status of the

U.S. Mitigation Program in each semi-annual report, as provided in Paragraph 65.f.

60.     <u>Mitigation Program Certifications</u>. With regard to the U.S. Mitigation Program,

Defendants shall certify the truth and accuracy of each of the following as part of its Mitigation

Implementation Plan and any subsequent amendments to that plan:

a.      Defendants are not required to perform or develop the U.S. Mitigation

Program or any Mitigation Projects proposed in the Mitigation Implementation Plan by any

federal, state, or local law or regulation, or by agreement, grant, or as injunctive relief awarded in

any other action in any forum;

b.      none of Defendants' project partners are required to perform or develop

any of the Mitigation Projects included in the Mitigation Implementation Plan by any federal,

state, or local law or regulation, or by agreement, grant, or as injunctive relief awarded in any

other action in any forum;

c.      each Mitigation Project is not a mitigation project that Defendants were

planning or intending to construct, perform, or implement other than in settlement of the claims

resolved in this Consent Decree;

d.      none of Hino's project partners will use funds from a federal financial

assistance transaction, including grants, cooperative agreements, federal loans, federally

guaranteed loans, and pass-through federal funds, to fund the replacement or modification of any

portion of a mobile source (e.g., locomotive or marine vessel) included in the U.S. Mitigation Program;

    e.  Defendants have not received, and will not receive, credit for any Mitigation Project in any other enforcement action, except for purposes of the forfeiture provision of the criminal plea agreement included in the Coordinated Settlements; and

    f.  Defendants shall neither generate nor use any pollutant reductions from the U.S. Mitigation Program as netting reductions, pollutant offsets, or to apply for, obtain, trade, or sell any pollutant reduction credits.

  61. Defendants agree that each certification required by Paragraph 60 is subject to 18 U.S.C. §§ 1001(a) and 1621, and California Penal Code §§ 115, 118, and 132.

  62. <u>California Mitigation Payment</u>. Defendants have entered into a separate agreement with CARB intended to mitigate excess emissions from the Subject Engines located in California. That agreement is set forth in the separate California Partial Consent Decree between Defendants and CARB that has been lodged with this Court contemporaneously with this Consent Decree.

## VIII. REPORTING REQUIREMENTS

  63. <u>Consent Decree Compliance Reports</u>. Defendants shall document compliance with the requirements of this Consent Decree in Semi-Annual Reports described in this Section, and in certain other required reports referenced in other Sections of this Consent Decree, such as the annual Corporate Compliance Report required under Paragraph 49. Unless otherwise provided, all reports in this Section shall be submitted simultaneously to the United States, EPA, CARB, and the California Attorney General.

64.     <u>Timing of Semi-Annual Reports</u>. Unless otherwise specified in this Consent Decree or the Parties otherwise agree in writing:

  a.      <u>General Timing</u>. For Semi-Annual Reports required under this Consent Decree, Defendants shall submit each Report within one month after the end of the applicable semi-annual reporting period (*i.e.,* by January 31 for the reporting period from the preceding July to December and by July 31 for the reporting period from the preceding January to June).

  b.      <u>Timing for First Semi-Annual Report</u>. If this Consent Decree's Effective Date is at least 45 Days before the end of a semi-annual period, Defendants' Semi-Annual Report for the first partial reporting period shall be due by the last day of the month following the end of that reporting period. For example, if the Effective Date is September 2, the first Report shall be due on January 31 and shall cover the period from September 2 to December 31. If this Consent Decree's Effective Date is less than 45 Days before the end of a semi-annual period, Defendants' first Semi-Annual Report shall not be due until the last day of the month following the end of the next semi-annual period. For example, if the Effective Date is December 3, the first Report shall be due on July 31 and shall cover the period from December 3 to June 30.

  c.      <u>Continued Submission of Semi-Annual Reports</u>. Defendants shall continue submitting Semi-Annual Reports under this Consent Decree until this Consent Decree is terminated in accordance with Section XIX (Termination).

65.     <u>Contents of Semi-Annual Reports</u>. Unless otherwise provided herein, Defendants shall submit separate Semi-Annual Reports to the United States, EPA, CARB, and the California Attorney General that include the content specified in the subparagraphs below.

     a.    <u>Emission Modification Program</u>.

     1)    Each Semi-Annual Report shall provide a written description of any problems encountered in implementing the Emission Modification Program since the last semi-annual reporting period and any solutions implemented or planned.

     2)    Each Semi-Annual Report shall provide a narrative description and quantitative assessment of progress made toward meeting the National Recall Target Rates and the California Recall Target Rates for the Eligible Vehicles during the semi-annual reporting period.

     3)    Each Semi-Annual Report shall be submitted with an Excel spreadsheet listing each Credited Vehicle (identified by VIN and separated by vehicles located in California and those located within the United States but outside of California) that counts toward achievement of the Recall Target Rates.

     b.    <u>Sale and Export Restrictions</u>. Each Semi-Annual Report shall provide a written description of any significant problems encountered in satisfying the sale and export restriction requirements imposed by Paragraph 37 since the last semi-annual reporting period and any solutions implemented or planned.

     c.    <u>Warranty Program</u>. Each Semi-Annual Report shall provide a written description of any significant problems encountered in implementing the Extended Warranty Programs since the last semi-annual reporting period and any solutions implemented or planned.

     d.    <u>Online Access to Information</u>. Each Semi-Annual Report shall provide a written description of any <u>significant</u> problems encountered in implementing the requirements regarding online access to information under Paragraph 38 since the last semi-annual reporting period and any solutions implemented or planned.

e.      Corporate Compliance. Defendants shall comply with the annual reporting requirements for corporate compliance set forth in Paragraph 49 of this Consent Decree.

f.      U.S. Mitigation Projects. *To the United States and EPA only*:  Each Semi-Annual Report shall provide a narrative summary of each of the Mitigation Projects included in the U.S. Mitigation Program submitted pursuant to Section VII (Mitigation). For each Mitigation Project, the Semi-Annual Report shall, at a minimum: (i) identify and describe the Mitigation Project, including the number and type of engines being replaced, number and type of engines being installed, and project location; (ii) present the expected reductions in NOx, PM, and $CO_2$ emissions for the Mitigation Project, which may reference earlier provided estimates, and explain any updates; (iii) provide a project timeline, indicating whether the project is forthcoming, in progress, or completed; and (iv) identify any significant problems encountered in implementing the Mitigation Project, and whether and how those have been resolved.

g.      Summary of Noncompliance. In addition to any narrative descriptions, each Semi-Annual Report shall include an Excel spreadsheet identifying any noncompliance with (i.e., violation of) the requirements of this Consent Decree that occurred during the preceding six months. For each such noncompliance, the spreadsheet shall identify (i) the date of the noncompliance, (ii) the Consent Decree requirement violated (including applicable Section and Paragraph number(s)), (iii) a description of the noncompliance, (iv) the duration of the noncompliance, (v) an explanation of the violation's likely cause, and (vi) a description of the steps taken or to be taken to prevent, remedy, or minimize the violation. If no violations occurred during the reporting period, Defendants shall submit a statement that no violations occurred. If the cause of a violation cannot be fully explained at the time the report is due, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit

65

an amendment to the report, including an explanation of the cause of the violation, within 30

Days of the day Defendants become aware of the cause of the violation, with further updates as

necessary. Nothing in this Section relieves Defendants of their obligation to provide the notice

required by Section X (Force Majeure).

        h.    <u>Submission Method</u>. Defendants shall submit each Semi-Annual Report,

including any relevant documentation, and each other report required by this Consent Decree to

the specified agencies with any required copies sent to the United States, EPA, and/or CARB by

electronic mail to the e-mail addresses set forth Section XV (Notices and Submissions).

      66.    <u>Required Certification</u>.

        a.    Each written report submitted by Defendants under this Section shall be

signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury that this document and all attachments
> were prepared under my direction or supervision in accordance with a
> system designed to assure that qualified personnel properly gather and
> evaluate the information submitted. Based on my inquiry of the person or
> persons who manage the system, or those persons directly responsible for
> gathering the information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete. I have no personal
> knowledge that the information submitted is other than true, accurate, and
> complete. I am aware that there are significant penalties for submitting
> false information, including the possibility of fine and imprisonment for
> knowing violations.

        b.    Defendants agree that the certification required by Paragraph 66.a is

subject to 18 U.S.C. §§ 1001(a) and 1621 and California Penal Code §§ 115, 118, and 132.

        c.    This certification requirement does not apply to emergency or similar

notifications where compliance would be impractical.

      67.    <u>Special Reporting Requirements</u>. Whenever Defendants reasonably believe any

violation of this Consent Decree or any other event affecting Defendants' performance under this

Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and CARB by telephone and email as soon as possible, but no later than 24 hours after Defendants first reasonably believe the violation or event may pose an immediate threat to the public health or welfare or the environment.

68.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

69.     Any information provided pursuant to this Consent Decree may be used by the United States or California in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law, consistent with Paragraphs 124 and 125 (regarding protected or otherwise confidential information).

## IX.    STIPULATED PENALTIES

70.     Defendants shall be liable for stipulated penalties to the United States and CARB for violations of this Consent Decree as specified in this Section, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

A. Civil Penalties.

71.     Late Payment of Civil Penalty.

a.      If Defendants fail to pay the civil penalty required to be paid to the United States under Paragraph 10 when due, Defendants shall pay the United States a stipulated penalty

of 0.10% of the unpaid principal amount due to the United States per Day for each Day that the payment is late.

       b.     If Defendants fail to pay the civil penalty required to be paid to CARB under Paragraph 10 when due, Defendants shall pay CARB a stipulated penalty of 0.10% of the unpaid principal amount due to CARB per Day for each Day that the payment is late.

B.   <u>Emission Modification Compliance</u>.

    72.    <u>Failure to Submit Remedial Plan(s) – J05E Recall Group</u>. If Defendants fail to submit to EPA and CARB a Remedial Plan for a Proposed Emission Modification for the J05E Recall Group by the deadline in Paragraph 24, Defendants shall pay the following stipulated penalties per Day for each Day that such Remedial Plan submission is late:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th Day |
| $10,000 | 15 through 30th Day |
| $20,000 | 31st Day and beyond |

    73.    <u>Failure to Obtain an Approved Emission Modification – J05E Recall Group</u>. If Defendants fail to obtain an Approved Emission Modification for the J05E Recall Group by the deadline in Paragraph 26, Defendants shall pay a stipulated penalty of $100,000,000. On the date Defendants pay this penalty, stipulated penalties related to Defendants' obligations to submit an Emission Modification for approval, or implement an Emission Modification for the J05E Recall Group, shall no longer continue to accrue, including the penalties described in Paragraphs 72 (Failure to Submit Remedial Plan(s) – J05E Recall Group), 76 (Failure to Make Available Approved Emission Modification), and 79 (Failure to Meet Emission Modification Program Rate Targets). Nothing in the previous sentence relieves Defendants of the obligation to pay any stipulated penalties that have accrued up to the date of payment of the stipulated penalty required

in this Paragraph 73 or any stipulated penalties for noncompliance with other provisions of the Consent Decree not specifically listed in the previous sentence.

74.    <u>Failure to Submit Remedial Plan(s) – J08E Recall Group</u>. If Defendants fail to submit to EPA and CARB a Remedial Plan(s) for a Proposed Emission Modification for the J08E Recall Group by the deadline in Paragraph 24, Defendants shall pay the following stipulated penalties per Day for each Day that submission is late:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $20,000 | 31st Day and beyond |

75.    <u>Failure to Obtain an Approved Emission Modification - J08E Recall Group</u>. If Defendants fail to obtain an Approved Emission Modification for the J08E Recall Group by the deadline in Paragraph 26, Defendants shall pay a stipulated penalty of $300,000,000. On the date Defendants pay this penalty, stipulated penalties related to Defendants' obligations to submit an Emission Modification for approval, or implement an Emission Modification for the J08E Recall Group, shall no longer continue to accrue, including the penalties described in Paragraphs 74 (Failure to Submit Remedial Plan(s) – J08E Recall Group), 76 (Failure to Make Available Approved Emission Modification), and 79 (Failure to Meet Emission Modification Program Rate Targets). Nothing in the previous sentence relieves Defendants of their obligation to pay any stipulated penalties that have accrued up to the date of payment of the stipulated penalty required in this Paragraph 75 or any stipulated penalties for noncompliance with other provisions of the Consent Decree not specifically listed in the previous sentence.

76.    <u>Failure to Make Available Approved Emission Modification</u>. If Defendants fail to comply with Paragraph 27 (Availability of Approved Emission Modification), Defendants shall

pay the following stipulated penalties per Recall Group (J05E and J08E) per Day for which the Approved Emission Modification was unavailable:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $20,000 | 31st Day and beyond |

77.     <u>Failure to Restrict Sales and Exports</u>. Defendants shall pay stipulated penalties of $25,000 per affected Subject Engine for any violation of the sale and export restrictions specified by Paragraph 37.

78.     <u>Failure to Establish and Maintain Extended Warranty Programs</u>.

a.      If Defendants fail to ensure the establishment and maintenance of the Extended Warranty Programs as required by Paragraphs 32–35 (and Appendix B), Defendants shall pay stipulated penalties for each Day on which the applicable Extended Warranty Program should have been offered and maintained but was not, through termination of this Consent Decree under Section XIX (Termination), as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $20,000 | 31st Day and beyond |

b.      In addition to paying these stipulated penalties, Defendants shall reimburse any affected Eligible Owner or Eligible Lessee any amount paid by the Eligible Owner or the Eligible Lessee to Defendants or their Dealers because of a failure to honor an applicable Extended Warranty.

79.     <u>Failure to Meet Emission Modification Program Rate Targets</u>.

a.      If Defendants fail to achieve an 85% National Recall Target Rate for the J05E Recall Group by the applicable Recall Target Deadline under Paragraph 31, Defendants shall pay the United States a stipulated penalty of $2,000,000 for each percentage point that the National Recall Target Rate falls short of 85%.

b.      If Defendants fail to achieve an 85% National Recall Target Rate for the J08E Recall Group by the applicable Recall Target Deadline, Defendants shall pay the United States a stipulated penalty of $6,000,000 for each percentage point that the National Recall Target Rate falls short of 85%.

c.      If Defendants fail to achieve an 85% California Recall Target Rate for the J05E Recall Group by the applicable Recall Target Deadline, Defendants shall pay CARB a stipulated penalty of: $314,000 for each percentage point that the California Recall Target Rate falls short of 85%.

d.      If Defendants fail to achieve an 85% California Recall Target Rate for the J08E Recall Group by the applicable Recall Target Deadline, Defendants shall pay CARB a stipulated penalty of: $942,000 for each percentage point that the California Recall Target Rate falls short of 85%.

e.      In calculating any payment under this Paragraph, each Recall Target Rate shall be rounded to the nearest percentage point. The calculated percentage should first be rounded to two significant digits to the right of the decimal point. Then: (i) if the fractional portion of the percentage is .50 or more, round up (so 83.50% rounds to 84%); and (ii) if the fractional portion of the percentage is .49 or below, round down (so 83.49% rounds to 83%).

71

80.   <u>Failure to Comply with Prohibition on Defeat Devices</u>. If Defendants install a Defeat Device in any Subject Engine after the Date of Lodging, Defendants shall pay a stipulated penalty of $50,000,000 per Defeat Device per Engine Family (not per engine).

81.   <u>Failure to Disclose AECDs</u>. If a Proposed Emission Modification or Approved Emission Modification includes an AECD that Defendants have not listed and described in the applicable Remedial Plan submitted to EPA and CARB, Defendants shall pay a stipulated penalty of $1,000,000 per undisclosed AECD that reduces the effectiveness of the Emission Control System under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, per group, the J05E Recall Group and the J08E Recall Group (not per engine).

C.   <u>Corporate Compliance</u>.

82.   <u>Failure to Separate Development, Certification, and Audit Functions</u>. Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to implement and maintain any requirement of Paragraph 43.a, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $50,000 | 31st Day and beyond |

83.   <u>Failure to Comply with Requirements Related to Compliance Resourcing or Compliance Policies and Procedures</u>. Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to comply with the requirement to have the External Compliance Consultant annually assess compliance resourcing pursuant to Paragraph 43.b, or fail to comply with the requirement to develop written standards focused on compliance with United States

environmental laws and regulations related to vehicle emissions pursuant to Paragraph 44, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

84.   Failure to Comply with Requirements Related to Ethics and Compliance Reporting (Whistleblower System) or Compliance Incentives and Disincentives. Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to comply with requirements related to ethics and compliance reporting (Whistleblower System) or compliance incentives and disincentives, pursuant to Paragraph 45, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

85.   Failure to Comply with Requirements Related to Technical Compliance Training. Defendants shall pay stipulated penalties per Day for each Day that Defendants fail to comply with requirements to make Technical Compliance Training available on the topics and by the deadlines specified in Paragraph 46, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

86.   Failure to Comply with Requirements Related to Risk Management, Internal Auditing, or Annual Compliance Testing and Reporting. Defendants shall pay stipulated penalties per Day for each Day that they fail to comply with requirements to conduct annual risk

assessments, conduct annual internal audits, engage an External Compliance Consultant to conduct annual compliance testing, or submit annual corporate compliance reports, under Paragraphs 47 and 49, as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

87.  <u>Failure to Comply with Requirements Related to Future Engine Certification and Independent Compliance Auditing</u>. Defendants shall pay stipulated penalties per Day for each Day that they fail to comply with requirements related to future engine certification and independent compliance auditing, pursuant to Paragraph 50, as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

D.  <u>Mitigation</u>.

88.  <u>Failure to Submit the Mitigation Implementation Plan</u>. If Defendants fail to submit a Mitigation Implementation Plan as required by Paragraph 53, by the deadline set forth in Paragraph 53, Defendants shall pay the United States the following stipulated penalties per violation per Day:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $1,000 | 1st through 14th Day |
| $2,500 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

89.  <u>Failure to Complete U.S. Mitigation Projects</u>. If Defendants fail to complete the U.S. Mitigation Program as presented in the Mitigation Implementation Plan and as required by

Paragraphs 51–58 by the deadline set forth in Paragraph 55, Defendants shall pay the United

States the following stipulated penalties per violation per Day:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st through 14th Day |
| $10,000 | 15th through 30th Day |
| $20,000 | 31st Day and beyond |

E.   Reporting and Information Submissions

90.    Failure to Submit Reports. If Defendants fail to submit a report or information as

required by Paragraph 36.b (Modifications Pursuant to NHTSA Safety Recall), Paragraphs 59-60

(mitigation reporting and certification), or Section VIII (Reporting Requirements), Defendants

shall pay stipulated penalties for each Day of noncompliance, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

91.    Failure to Submit Information. If Defendants fail to provide EPA or CARB with

information or other items covered by Section XII (Information Collection and Retention),

within 45 Days of a request by EPA or CARB, Defendants shall pay stipulated penalties for each

Day of noncompliance with the request, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

92.    False Statements. Defendants shall pay a stipulated penalty of $1,000,000 for each

report or Submission required to be submitted pursuant to this Consent Decree that contains a

knowingly false, fictitious, or fraudulent statement or representation of material fact.

75

93.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

94.     The United States, in consultation with CARB, shall issue any demand for stipulated penalties in writing to Defendants. The written demand for payment of stipulated penalties shall specifically identify the violation.

95.     Defendants shall pay any stipulated penalties to the United States and CARB, as applicable, within 30 Days of receiving the written demand. Defendants shall pay 84% of the total stipulated penalty amount due to the United States and 16% to CARB, except for: (i) violations of the civil penalty payment requirements of Paragraph 10, for which Defendants shall pay stipulated penalties as specified by Paragraph 71; (ii) violations of the Emission Modification Program Rate requirements of Paragraph 31, for which Defendants shall pay stipulated penalties as specified by Paragraph 79; (iii) violations of Corporate Compliance Provisions in Paragraphs 43–50, for which Defendants shall pay stipulated penalties to the United States; and (iv) violations of U.S. Mitigation Program requirements covered by Paragraphs 51–58, for which Defendants shall pay stipulated penalties to the United States.

96.     The United States, in consultation with CARB, shall issue any demand for stipulated penalties in writing to Defendants. The written demand for payment of stipulated penalties shall specifically identify the violation.

97.     Either the United States or CARB may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

However, no action by either the United States or CARB may reduce or waive stipulated penalties due the other.

98.     Stipulated penalties shall continue to accrue as provided in Paragraph 93 during any Dispute Resolution, but need not be paid until the following:

    a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA or CARB, as applicable, that is not appealed to the District Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States and CARB, as applicable, within 30 Days of the effective date of the agreement or the receipt of EPA's or CARB's decision or order.

    b.     If the dispute is appealed to the District Court and the United States or California prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in Paragraph 98.c, below.

    c.     If any Party appeals the District Court's decision and the United States or California prevails in whole or in part, Defendants shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

    d.     The interest payable under this Paragraph shall accrue from 30 Days after Defendants' receipt of the written demand for penalties through the date of payment. The interest shall be computed at the rate specified in 28 U.S.C. § 1961 as of the date falling 30 Days after Defendants' receipt of the written demand for penalties.

99.     <u>Obligations Prior to the Effective Date</u>. Upon the Effective Date, the stipulated penalty provisions of this Consent Decree shall be retroactively enforceable with regard to any and all violations of requirements of this Consent Decree that have occurred from the Date of

77

Lodging to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

100.    Defendants shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

101.    Defendants shall pay stipulated penalties owing to CARB in the manner set forth in Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

102.    Stipulated penalties paid to CARB under this Consent Decree shall be deposited into the Air Pollution Control Fund for the purpose of enhancing CARB's mobile source emissions control program through additional certification review, in-use evaluation, real-world testing, enforcement actions, costs, and other CARB activities related to the control of air pollution.

103.    If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, to the United States and California Code of Civil Procedure § 685.010 to California, accruing as of the date payment became due and continuing until payment has been made in full. Nothing in this Paragraph shall be construed to limit the United States or California from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

104.    The payment of stipulated penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

105.    <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' or California's exclusive remedy for violations of this Consent Decree, including violations of this Consent Decree that are also violations of law. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States and California expressly reserve the right to seek any other relief they deem appropriate for Defendants' violation of this Consent Decree or applicable law, including but not limited to an action against Defendants for statutory penalties, additional administrative or injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree (to the United States or to CARB, respectively).

## X.    FORCE MAJEURE

106.    "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors or Dealers, that delays or prevents the performance of any obligation under this Consent Decree despite Defendants' best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure — as it is occurring and following the potential force majeure — such that any delay or non-performance is, and any adverse effects of the delay or non-performance are, minimized to the

greatest extent possible. "Force majeure" does not include financial inability to perform any obligation under this Consent Decree.

107.    If any event occurs for which Defendants will or may assert a claim of force majeure, Defendants shall provide initial notice to the United States, EPA, the California Attorney General, and CARB by electronic mail transmitted to the e-mail addresses set forth in Section XV (Notices and Submissions). The deadline for the initial notice is seven Days after Defendants first knew or should have known that the event would likely delay or prevent performance. Defendants shall be deemed to know of any circumstance of which any Dealer of, contractor of, subcontractor of, or entity controlled by Defendants knew or should have known.

108.    If Defendants seek to assert a claim of force majeure concerning the event, within seven Days after the initial notice under Paragraph 107, Defendants shall submit a further notice to the United States, EPA, the California Attorney General, and CARB by electronic mail transmitted to the e-mail addresses set forth in Section XV (Notices and Submissions). That further notice shall include: (i) an explanation and description of the event and its effect on Defendants' completion of the requirements of the Consent Decree; (ii) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (iii) if applicable, the proposed extension of time for Defendants to complete the requirements of the Consent Decree; (iv) Defendants' rationale for attributing such delay to a force majeure; (v) a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (vi) all available proof supporting the claim that the delay was attributable to a force majeure.

109.    Failure to submit a timely or complete notice or claim under Paragraph 107 or 108 regarding an event precludes Defendants from asserting any claim of force majeure regarding that event.

110.    If the United States, EPA, the California Attorney General, and CARB agree that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States, EPA, the California Attorney General, or CARB, as applicable, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States, EPA, the California Attorney General, or CARB will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

111.    If the United States, EPA, the California Attorney General, or CARB do not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States, EPA, the California Attorney General, or CARB will notify Defendants in writing of that decision.

112.    If Defendants elect to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 Days after receipt of a notice from the United States, EPA, the California Attorney General, or CARB under Paragraph 111. In any such proceeding, Defendants have the burden of proving that it is entitled to relief under Paragraph 106, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of Paragraphs 106–108. If Defendants carry this burden, the delay or non-performance at issue shall be deemed not to be a violation by

Defendants of the affected obligation of this Consent Decree identified to the United States, EPA, the California Attorney General, CARB, and the Court.

## XI.    DISPUTE RESOLUTION

113.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising between the Parties under or with respect to this Consent Decree. Defendants' failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States or CARB to enforce any obligation of Defendants arising under this Consent Decree precludes Defendants from raising any such issue as a defense to any such enforcement action.

114.    Informal Dispute Resolution. Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendants send the United States and CARB a written notice of dispute. Such notice of dispute shall clearly state the matter in dispute. If the matter in dispute relates to Section VII (Mitigation), then only the United States (not CARB) will be involved in the dispute resolution process. The period of informal negotiations shall not exceed 20 Days from the date Defendants sent its notice of dispute, unless that period is modified by a written agreement of the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position(s) advanced by the United States/CARB (i.e., the United States and/or CARB, as applicable) shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

115.   <u>Formal Dispute Resolution</u>. Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending the United States/CARB a written statement of position regarding the matter in dispute. The statement of position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

116.   The United States, after consultation with CARB (unless the matter in dispute relates to Section VII (Mitigation)), will send Defendants a statement of position within 45 Days of receipt of Defendants' statement of position. The United States'/CARB's statement of position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States/CARB. The United States'/CARB's statement of position is binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

117.   <u>Judicial Dispute Resolution</u>. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States/CARB a motion requesting judicial resolution of the dispute. The motion must be filed within 30 Days of receipt of the United States' statement of position pursuant to the preceding Paragraph. The motion may not raise any issue that Defendants did not raise in informal dispute resolution pursuant to Paragraph 114 unless the issue was first raised by the United States'/CARB's statement of position. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

118.    The United States/CARB shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

119.    <u>Standard of Review</u>.

a.      <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought pursuant to Paragraph 117 that pertains to:

1)      the adequacy or appropriateness of plans or procedures to implement plans, schedules, or any other item that requires approval by EPA/CARB under this Consent Decree;

2)      the adequacy of the performance of work undertaken pursuant to this Consent Decree; and/or

3)      all other disputes that are accorded review on the administrative record under applicable principles of administrative law,

Defendants shall have the burden of demonstrating, based on the administrative record, that the position of EPA/CARB, as applicable, is arbitrary and capricious or otherwise not in accordance with law based on the administrative record. For purposes of this Paragraph, EPA/CARB will maintain an administrative record of the dispute, which will contain all statements of position, including supporting documentation, submitted pursuant to this Section. Prior to the filing of any motion, the Parties may submit additional materials to be part of the administrative record pursuant to applicable principles of administrative law.

b.      <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought pursuant to Paragraph 117, Defendants shall bear the burden of

84

demonstrating by a preponderance of the evidence that its position complies with this Consent Decree.

120.    In any disputes brought under this Section, it is hereby expressly acknowledged and agreed that this Consent Decree was jointly drafted in good faith by the United States, California, and Defendants. Accordingly, the Parties hereby agree that all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

121.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 98. If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.    INFORMATION COLLECTION AND RETENTION

122.    <u>Access to Information</u>. The United States, CARB, and their representatives, including attorneys, contractors, and consultants (collectively, "Agency Representatives"), shall have the right of entry, upon presentation of credentials, at all reasonable times into any of Defendants' offices, plants, or facilities:

       a.    to monitor the progress of activities required under this Consent Decree;

       b.    to verify any data or information submitted to the United States or CARB in accordance with the terms of this Consent Decree;

       c.    to obtain documentary evidence, including photographs and similar data;

       d.      to assess Defendants' compliance with this Consent Decree; and/or

       e.      for other purposes as set forth in 42 U.S.C. § 7542(b) and Cal. Gov't Code § 11180 *et seq.*

123.   <u>Records Retention and Access to Records</u>.

       a.      Until three years after the termination of this Consent Decree, Defendants shall retain, and shall instruct its contractors and agents to preserve, all Records in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendants' performance of its obligations under this Consent Decree. The United States and CARB have an interest in these Records, which are necessary to their ability to oversee and assess Defendants' compliance with the terms of this Consent Decree resolving the United States' and CARB's allegations in their respective Complaints. These information-retention requirements shall apply regardless of any contrary corporate or institutional policies or procedures. Nothing in this Paragraph shall apply to any documents in the possession, custody, or control of any outside legal counsel retained by Defendants in connection with this Consent Decree or of any contractors or agents retained by such outside legal counsel solely to assist in the legal representation of Defendants.

       b.      At any time during the three-year information-retention period specified by Paragraph 123.a, upon request by the United States or CARB, Defendants shall provide the requesting agency representative copies of any Records required to be maintained under Paragraph 123.a within 15 Days and an English translation of the requested copies of Records, if the original is in a non-English language, within 15 Days, subject to reasonable extension if necessary by approval of the United States or CARB.

86

124.   <u>Privileged or Protected Information</u>. Defendants may assert that certain Records contain material that is privileged or protected as provided under federal or California law. If Defendants assert such a privilege or protection, Defendants shall provide the requesting agency representative a redacted version of the Record and the following information, if it is not apparent in the redacted version of the Record: (i) the title of the Record; (ii) the date of the Record; (iii) the name and title of each author of the Record; (iv) the name and title of each addressee and recipient; (v) a description of the subject of the Record; and (vi) the privilege or protection asserted by Defendants. However, Defendants may make no claim of privilege or protection regarding: (i) any data regarding the Subject Engines that Defendants are required to create or generate pursuant to this Consent Decree; or (ii) the final version of a portion of any record that Defendants are required to create or generate pursuant to this Consent Decree.

125.   <u>Confidential Business Information</u>. Defendants may also assert that Records required to be provided under this Consent Decree are protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2 or 17 C.C.R. §§ 91000 *et seq.* As to any Record that Defendants seeks to protect as CBI, Defendants and the United States and/or California, as applicable, shall follow the procedures set forth in 40 C.F.R. Part 2, and, for California, in 17 C.C.R. § 91000 *et seq.*

126.   This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or California pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain Records imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

127.   <u>Effect of Settlement of Civil Claims of the United States</u>. Subject to the reservations of rights in this Section, this Consent Decree resolves the United States' civil claims for civil penalties and injunctive relief against Defendants for: (i) the violations alleged in the U.S. Complaint in this action through the Date of Lodging; and (ii) violations arising from or relating to Defendants' applications for Certificates of Conformity, Running Changes, and Field Fixes for the Subject Engines, any Emission Control System configurations approved by such Certificates, Running Changes, and Field Fixes, and any information provided to EPA for the purpose of securing such COCs, Running Changes, and Field Fixes. Payment of the civil penalty described herein also resolves the civil claims of CBP and NHTSA, as set forth in the CBP Agreement and NHTSA Agreement, respectively.

128.   <u>Effect of Settlement of Civil Claims of California</u>. Subject to the reservations of rights in this Section, this Consent Decree resolves all the civil claims of California for civil penalties and injunctive relief against Defendants for: (i) the violations alleged in the California Complaint in this action through the Date of Lodging; and (ii) violations arising from or relating to Defendants' applications for Executive Orders, Running Changes, and Field Fixes for the Subject Engines, any Emission Control System configurations approved by such Executive Orders, Running Changes, and Field Fixes and any information provided to CARB for the purpose of securing such Executive Orders.

129.   Upon the Effective Date, and subject to the reservations in this Section, this Consent Decree resolves California's claims for costs of investigating and prosecuting Defendants' violations identified in the California Complaint.

88

130.    The amount of the civil penalty is based on an analysis of the Financial Information, which demonstrated that Defendants have a limited ability to pay a civil penalty. Defendants hereby certify that the Financial Information provided is true, accurate, and complete and that there has been no material change in Defendants' financial condition between the time the Financial Information was submitted and the date of Defendants' execution of this Consent Decree. Notwithstanding any other provision of this Consent Decree, the United States and CARB reserve the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information Defendants provided is false, or in any material respect inaccurate or incomplete. This right is in addition to any other rights and causes of action, civil or criminal, that the United States or CARB may have under law or equity in such event.

131.    <u>Reservations of Rights by the United States and California</u>.

a.    The United States and California reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.

b.    The United States further reserves any claim(s) of any agency of the United States other than EPA, CBP, and NHTSA, subject to any reservations in the CBP Agreement and NHTSA Agreement.

c.    California further reserves, and this Consent Decree is without prejudice to, any and all claims, rights, and remedies against Defendants with respect to:

(a)    further injunctive relief, including prohibitory and mandatory injunctive provisions intended to enjoin, prevent, and deter future misconduct, and/or incentivize its detection, disclosure, and/or prosecution; or to enjoin false advertising, violation of

89

Case 2:25-cv-10144-SFC-APP  ECF No. 2, PageID.259  Filed 01/15/25  Page 92 of 117

environmental laws, violation of consumer laws, the making of false statements, or the use or

employment of any practice that constitutes unfair competition;

> (b)     further injunctive relief pursuant to the California Health and

Safety Code as alleged in the California Complaint to mitigate the total lifetime excess emissions

in California from the Subject Engines, which injunctive relief is fully set forth in and resolved

by the California Partial Decree, lodged concurrently with this Consent Decree;

> (c)     any part of any claims for the violation of securities or false claims

laws;

> (d)     any criminal liability;

> (e)     any and all other claim(s) of any officer or agency of the State of

California other than CARB;

> (f)     any and all claims for relief to customers, including claims for

restitution, refunds, rescission, damages, disgorgement;

> (g)     any and all claims of California Attorney General; and

> (h)     any all claims held by individual consumers.

132.     This Consent Decree shall not be construed to limit the rights of the United States

or California to obtain penalties or injunctive relief under the Act or implementing regulations,

or under other federal or state laws, regulations, or permit conditions, except as expressly

specified in Paragraphs 127–129. The United States and California further reserve all legal and

equitable remedies to address any conditions if there is or may be an imminent and substantial

endangerment to the public health or welfare or the environment arising at any of Defendants'

facilities, or posed by Subject Vehicles, whether related to the violations addressed in this

Consent Decree or otherwise. This Consent Decree does not impair the California Attorney

General's right to seek relief for the claims alleged in the California Complaint or other violations of applicable law. However, the California Partial Decree and the California Attorney General Agreement resolve the remaining claims in the California Complaint.

133.    In any subsequent administrative or judicial proceeding initiated by the United States or California for injunctive relief, civil penalties, other appropriate relief relating to any alleged violations by Defendants, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States or California in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 127–129.

134.    This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendants' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and California do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act or with any other provisions of federal, state, or local laws, regulations, or permits.

135.    This Consent Decree does not limit or affect the rights of Defendants or of the United States or California against any third parties not party to this Consent Decree, nor does it

limit or affect the rights of third parties not party to this Consent Decree against Defendants, except as otherwise provided by law.

136.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.   COSTS

137.    The Parties shall bear their own costs of this action, including attorneys' fees, subject to Paragraph 131.c, except that the United States and CARB shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due under this Consent Decree but not paid by Defendants.

## XV.    NOTICES AND SUBMISSIONS

138.    Unless otherwise specified in this Consent Decree, Submissions shall be accompanied by a cover letter and submitted electronically as described below, unless such notices are unable to be uploaded to the CDX electronic system (in the case of EPA) or transmitted by email (in the case of any other party). For all Submissions to EPA, Defendants shall register for the CDX electronic system and upload such notices at https://cdx.epa.gov/epa_home.asp. Any Submissions that cannot be uploaded to CDX or transmitted via email or via a secure server shall be provided in writing via overnight mail (and if any attachment is voluminous, it shall be provided on a disk, hard drive, or other equivalent successor technology) to the addresses below:

| | |
|---|---|
| <u>As to the United States</u>: | DOJ at the email, or if necessary, the mail addresses below **and** EPA (via CDX or the mail address below if CDX is not possible) |

As to DOJ by email:                     eescdcopy.enrd@usdoj.gov
                                        Re: DJ # 90-5-2-1-12300

As to DOJ by U.S. mail:                 EES Case Management Unit
                                        Environment and Natural Resources Division
                                        U.S. Department of Justice
                                        P.O. Box 7611
                                        Washington, DC 20044-7611
                                        Re: DJ # 90-5-2-1-12300

As to DOJ by overnight mail:            4 Constitution Square
                                        150 M Street, N. E.
                                        Suite 2.900
                                        Washington, DC 20002
                                        Re: DJ # 90-5-2-1-12300

As to EPA by email:                     kaul.meetu@epa.gov
                                        steinberg.kayla@epa.gov
                                        altendorfer.ian@epa.gov
                                        kane.eleanor@epa.gov

As to EPA by U.S. mail:                 Director, Air Enforcement Division
                                        1200 Pennsylvania Avenue, NW
                                        William J. Clinton South Building
                                        MC 2242A
                                        Washington, DC 20460

As to California:                       CARB and the California Attorney General at the
                                        email or if necessary, mail addresses below, as
                                        applicable. All information should be submitted to
                                        CARB electronically without paper copies, where
                                        possible.

As to CARB by email:                    HinoCD@arb.ca.gov

As to CARB by mail:                     Chief Counsel
                                        California Air Resources Board
                                        Legal Office
                                        1001 I Street
                                        Sacramento, CA 95814

As to CARB by telephone:                916-322-2884

As to the California
Attorney General by email:           Mike.Cayaban@doj.ca.gov
                                     Myung.Park@doj.ca.gov
                                     Josh.Caplan@doj.ca.gov
                                     Ryan.Hoffman@doj.ca.gov


As to the California
Attorney General by mail:            Mike Cayaban
                                     Myung Park
                                     Supervising Deputy Attorneys General

                                     Joshua Caplan
                                     Ryan Hoffman
                                     Corey Moffat
                                     Deputy Attorneys General

                                     Natural Resources Law Section
                                     Office of the Attorney General
                                     455 Golden Gate Avenue, Suite 110009
                                     San Francisco, CA 94102

As to Hino:                          Counsel for Hino and Hino at the email or if
                                     necessary, mail addresses below.

As to Hino by email:                 lbreuer@cov.com
                                     nkutler@cov.com
                                     jmizerak@cov.com
                                     123388@hino.co.jp
                                     MKulick@HMMUSA.COM
                                     SChacko@hino.com

As to Hino by mail:                  Lanny Breuer
                                     Noam Kutler
                                     Jack Mizerak
                                     Covington & Burling LLP
                                     850 10th Street Northwest
                                     Washington, DC 20001
                                     Telephone: (202) 662-6000

139.    Any Party may, by written notice to the other Parties, change its designated

Submissions recipient or submission address provided in Paragraph 138.

94

140.     Submissions pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.   EFFECTIVE DATE

141.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendants hereby agree that they shall be bound to perform duties under this Consent Decree scheduled to occur prior to the Effective Date and shall perform those duties pursuant to this Consent Decree. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XVII.   RETENTION OF JURISDICTION

142.     The Court shall retain jurisdiction over this case, until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree. The Court shall retain jurisdiction over this case for the provisions of this Consent Decree that remain after termination.

## XVIII.   MODIFICATION

143.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the

95

modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

144.    The United States or CARB, as applicable, will file any non-material modifications with the Court. Non-material modifications shall include, without limitation: (i) changes to the method of Submission unless this Consent Decree originally mandated that a Submission be made public and the proposed change involves changing that method of submission to make it non-public; (ii) extensions of time not to exceed 90 Days at a time or 180 Days cumulatively with respect to any single deadline; and (iii) corrections of scrivener's errors.

145.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burdens of proof provided by Paragraph 119, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

146.    No earlier than five years after the Effective Date, after Defendants have completed the requirements of Section VI.A (Engine Compliance) and Section VII (Mitigation); have demonstrated that they are in compliance with the requirements of Section VI.B (Corporate Compliance); have complied with all other requirements of this Consent Decree; and have paid the civil penalty, any stipulated penalties, and any accrued interest, as required under this Consent Decree, Defendants may serve upon the United States and CARB a request for termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation. Defendants may serve such a request for termination

notwithstanding specified requirements that shall continue after termination of the Consent Decree.

147.    Following receipt by the United States and CARB of Defendants' request for termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States (after consultation with CARB) agrees that the Consent Decree may be terminated, the United States shall file a motion or a stipulation and agreed order seeking entry of a Court order terminating the Decree; provided, however, that: (i) the provisions associated with effectuating and enforcing Paragraph 37 (Sale and Export Restrictions) shall continue in full force and effect for ten years from the Effective Date; and (ii) the provisions associated with effectuating and enforcing Paragraph 21 (Establishment and Maintenance of Emission Modification and Extended Warranty Programs) shall continue in full force and effect until those provisions terminate by their own terms.

148.    If the United States (after consultation with CARB) does not agree that this Consent Decree may be terminated, Defendants may invoke Dispute Resolution under Section XI (Dispute Resolution). However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until at least 90 Days after service of its request for termination.

## XX.    PUBLIC PARTICIPATION

149.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding this Consent Decree disclose facts or considerations indicating that this Consent Decree is inappropriate, improper, or inadequate. CARB reserves the right to withdraw or withhold its consent if the

United States does so. Defendants consent to entry of this Consent Decree without further notice

and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of this Consent Decree, unless the United States has notified Defendants

in writing that it no longer supports entry of this Consent Decree.

## XXI.   SIGNATORIES/SERVICE

150.    Each undersigned representative of Defendants, California, and the U.S.

Department of Justice identified on the DOJ signature page below, certifies that that person is

fully authorized to enter into the terms and conditions of this Consent Decree and to execute and

legally bind the Party that person represents to this document.

151.    This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis. For purposes of this Consent Decree, a signature page that is

transmitted electronically (e.g., by facsimile or emailed "PDF") shall have the same effect as an

original.

152.    Defendants agree to accept service of process by regular U.S. mail, express mail,

or electronic mail with respect to all matters arising under or relating to this Consent Decree and

to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil

Procedure and any applicable Local Rules of this Court including, but not limited to, service of a

summons. Defendants need not file an answer to the Complaints in this action unless or until the

Court expressly declines to enter this Consent Decree.

## XXII.  INTEGRATION

153.    This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in this Consent Decree

and supersedes all prior agreements and understandings, whether oral or written, concerning the

settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, and the Coordinated Settlements, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIII.  26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

154.    For purposes of the identification requirement in Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance by Defendants of Section II (Applicability), Paragraph 7, Section V (Approval of Submissions; U.S./EPA/CARB Decision-Making), Paragraphs 17–19, Section VI (Compliance Requirements) (excluding Paragraphs 25 and 36), Section VII (Mitigation), Paragraphs 51–59, 62, Section VIII (Reporting Requirements), Paragraphs 63–67, Section XII (Information Collection and Retention), Paragraphs 122–123, Section XV (Notices and Submissions), Paragraph 138, and the requirements of the documents identified and incorporated by Section XXV (Appendices), is restitution, remediation, or required to come into compliance with law.

## XXIV.  HEADINGS

155.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

## XXV.  APPENDICES

156.    The following Appendices are attached to and part of this Consent Decree:

Appendix A:   Identification of Subject Engines and Subject Engine Sub-Categories

Appendix B:   Extended Warranty for Modified Vehicles

Appendix C:   Extended Warranty for Subject Vehicles

Appendix D:   Hino Financial Information

## XXVI.  FINAL JUDGMENT

157.    Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute a final judgment of the Court as to the United States, CARB, and

Defendants. The Court therefore enters this judgment as a final judgment under Fed. R. Civ. P.

54 and 58.

Dated and entered this __ day of _____, 20__.


_____
UNITED STATES DISTRICT JUDGE

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


January 15, 2025                    *DavidWeigert*
Date                                  _____
                                      DAVID LAUFMAN WEIGERT (IL Bar 6231385)
                                      Senior Counsel
                                      ALEXANDRA SHERERTZ (MD Licensed)
                                      Senior Attorney
                                      Environmental Enforcement Section
                                      Environment and Natural Resources Division
                                      U.S. Department of Justice
                                      P.O. Box 7611, Ben Franklin Station
                                      Washington, DC  20044-7611
                                      (202) 514-0133
                                      david.weigert@usdoj.gov

                                      LOCAL COUNSEL

                                      DAWN N. ISON
                                      United States Attorney

                                      KEVIN R. ERSKINE (P69120)
                                      ANTHONY C. GENTNER (P79535)
                                      Assistant United States Attorneys
                                      211 W. Fort Street, Suite 2001
                                      Detroit, Michigan 48226
                                      (313) 226-9778
                                      anthony.gentner2@usdoj.gov

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR THE U.S. ENVIRONMENTAL PROTECTION
AGENCY:

CECIL RODRIGUES    Digitally signed by CECIL
                   RODRIGUES
                   Date: 2025.01.13 12:57:04 -05'00'

CECIL RODRIGUES
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

ROSEMARIE A. KELLEY
Office Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

MARY E. GREENE
Division Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

MEETU KAUL
Senior Legal Advisor
IAN D. ALTENDORFER
KAYLA STEINBERG
Attorney-Advisors
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

102

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR THE PEOPLE OF THE STATE OF CALIFORNIA BY AND THROUGH THE
CALIFORNIA AIR RESOURCES BOARD:

Date: January 13, 2025

MICHAEL P. CAYABAN
MYUNG J. PARK
Supervising Deputy Attorneys General
RYAN R. HOFFMAN
JOSHUA M. CAPLAN
COREY M. MOFFAT
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102

103

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR THE CALIFORNIA AIR RESOURCES BOARD:

Date: January 13, 2025

LIANE M. RANDOLPH
Chair
California Air Resources Board
1001 I Street
Sacramento, CA 95814

STEVEN S. CLIFF, PH.D.
Executive Officer
California Air Resources Board
1001 I Street
Sacramento, CA 95814

ELLEN M. PETER
Chief Counsel
ABIGAIL D. MAY
Deputy Counsel
SHANNON DILLEY
Assistant Chief Counsel
IAN CECERE
Senior Attorney
ALLISON SWEENEY
Attorney

Legal Office
California Air Resources Board
1001 I Street
Sacramento, CA 95814

104

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and *People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR HINO MOTORS, LTD.:

January 15, 2025
_____
Date

_____
SATOSHI OGISO
President & CEO,
Member of the Board of Directors
Hino Motors, Ltd.

105

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. at al.* (E.D. Mich.)

FOR HINO MOTORS MANUFACTURING U.S.A., INC.:

January 15, 2025
Date

DAVEY JUNG
President & Chief Executive Officer

106

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and *People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)

FOR HINO MOTORS SALES U.S.A., INC.:

January 15, 2025
Date

GLENN ELLIS
President & Chief Executive Officer

107

Signature Page for Consent Decree in *United States v. Hino Motors, Ltd. et al.* and
*People of the State of California v. Hino Motors, Ltd. et al.* (E.D. Mich.)


COUNSEL FOR HINO MOTORS, LTD.,
HINO MOTORS MANUFACTURING U.S.A., INC., AND
HINO MOTORS SALES U.S.A., INC.:


January 15, 2025
_____
Date

_____

LANNY BREUER
MARK FINUCANE
JENNIFER SAPERSTEIN
NOAM KUTLER
JOHN MIZERAK
Covington & Burling LLP
850 10th Street Northwest
Washington, DC 20001
Telephone: (202) 662-6000
lbreuer@cov.com
mfinucane@cov.com
jsaperstein@cov.com
nkutler@cov.com
jmizerak@cov.com

108

## Appendix A

### Identification of Subject Engines and Subject Engine Sub-Categories

| MY | Engine Family | Model | Engine Category |
|----|---------------|-------|-----------------|
| 2010 | AHMXH07.7JVB | J08E | Highway |
| 2010 | AHMXH07.7JVC | J08E | Highway |
| 2011 | BHMXH07.7JVB | J08E | Highway |
| 2011 | BHMXH07.7JVC | J08E | Highway |
| 2012 | CHMXH05.1JTP | J05E | Highway |
| 2012 | CHMXH07.7JVB | J08E | Highway |
| 2012 | CHMXH07.7JVC | J08E | Highway |
| 2013 | DHMXH05.1JTP | J05E | Highway |
| 2013 | DHMXH07.7JVB | J08E | Highway |
| 2013 | DHMXH07.7JVC | J08E | Highway |
| 2014 | EHMXH05.1JTP | J05E | Highway |
| 2014 | EHMXH07.7JVB | J08E | Highway |
| 2014 | EHMXH07.7JVC | J08E | Highway |
| 2015 | FHMXH05.1JTP | J05E | Highway |
| 2015 | FHMXH07.7JVB | J08E | Highway |
| 2015 | FHMXH07.7JVC | J08E | Highway |
| 2016 | GHMXH05.1JTP | J05E | Highway |
| 2016 | GHMXH07.7JVB | J08E | Highway |
| 2016 | GHMXH07.7JWU | J08E | Highway |
| 2017 | HHMXH05.1JTP | J05E | Highway |
| 2017 | HHMXH07.7JVB | J08E | Highway |
| 2017 | HHMXH07.7JWU | J08E | Highway |
| 2018 | JHMXH05.1JTP | J05E | Highway |
| 2018 | JHMXH07.7JVB | J08E | Highway |
| 2019 | KHMXH05.1JTP | J05E | Highway |
| 2019 | KHMXH07.7JVB | J08E | Highway |
| 2019 | KHMXH08.9AVF | A09C | Highway |
| 2011 | BHMXL07.7JUV | J05E, J08E | Nonroad |
| 2011 | BHMXL10.5PVC | P11C | Nonroad |
| 2011 | BHMXL12.9EVV | E13C | Nonroad |
| 2012 | CHMXL05.1JTJ | J05E | Nonroad |
| 2012 | CHMXL07.7JUV | J05E, J08E | Nonroad |
| 2012 | CHMXL10.5PVC | P11C | Nonroad |
| 2012 | CHMXL12.9EVV | E13C | Nonroad |
| 2013 | DHMXL05.1JTJ | J05E | Nonroad |
| 2013 | DHMXL07.7JUV | J05E, J08E | Nonroad |
| 2013 | DHMXL10.5PVC | P11C | Nonroad |

A-1

| 2013 | DHMXL12.9EVV | E13C | Nonroad |
|------|--------------|------|---------|
| 2014 | EHMXL05.1JTJ | J05E | Nonroad |
| 2014 | EHMXL07.7JVV | J05E, J08E | Nonroad |
| 2015 | FHMXL07.7JVV | J05E, J08E | Nonroad |
| 2015 | FHMXL10.5PVN | P11C | Nonroad |
| 2016 | GHMXL07.7JVV | J05E, J08E | Nonroad |
| 2016 | GHMXL10.5PVN | P11C | Nonroad |
| 2017 | HHMXL07.7JVV | J05E, J08E | Nonroad |
| 2017 | HHMXL10.5PVN | P11C | Nonroad |
| 2018 | JHMXL07.7JVV | J05E, J08E | Nonroad |
| 2018 | JHMXL10.5PVN | P11C | Nonroad |
| 2019 | KHMXL05.1JVA | J05E | Nonroad |
| 2019 | KHMXL07.7JVV | J05E, J08E | Nonroad |
| 2019 | KHMXL07.7JWV | J08E | Nonroad |
| 2019 | KHMXL07.7JYD | J05E, J08E | Nonroad |
| 2019 | KHMXL10.5PVN | P11C | Nonroad |
| 2019 | KHMXL12.9EYM | E13C | Nonroad |

**Appendix B**

**Extended Warranty for Modified Vehicles**

Subject to standard limitations that must be identified to Eligible Owners and Eligible Lessees, which may set forth exclusions like accident, abuse, neglect, or installation of unexempted parts (as that term is described in 13 C.C.R. § 2036(d)(10)), and applicable existing warranty provisions that will remain in effect, pursuant to Paragraph 32 of the Consent Decree, the Extended Warranty for Modified Vehicles shall cover the cost of all parts and labor needed to repair the items listed below, including diagnostic services and OBD scans, and shall remain in effect for five (5) years from the date of installation of an Approved Emission Modification, regardless of mileage:

1.    Diesel Oxidation Catalyst ("DOC"),

2.    Selective Catalyst Reduction ("SCR") Catalyst,

3.    Exhaust Gas Recirculation ("EGR") Valve.

4.    Engine Control Unit ("ECU") and Software,

5.    DEF Line Heaters,

6.    DEF System Control Unit ("DCU") and Software,

7.    DOC Inlet Temperature Sensor,

8.    DOC Outlet Temperature Sensor,

9.    Diesel Particulate Filter ("DPF" or "DPR"),

10.    DPF Outlet Temperature Sensor,

11.    DPF Pressure Sensor – Upstream,

12.    DPF Pressure Sensor – Downstream,

13.    Particulate Matter ("PM") Sensor,

14.    SCR Inlet Temperature Sensor,

15.    NOx Sensor – Upstream,

16. NOx Sensor – Downstream,

17. All OBD Sensors for the DPF System,

18. Camshaft Position Sensor,

19. Coolant Temperature Sensor,

20. Crankshaft Position Sensor,

21. Intake Air Flow Meter,

22. Outside Air Temperature Sensor,

23. After Turbo Catalyst,

24. DEF Supply Module, Pump, and Temperature Sensor Unit,

25. DEF Quality Sensor,

26. Turbocharger,

27. Fuel Cut Valve,

28. Burner Atomizer, and

29. any other parts repaired, replaced, or modified by the Approved Emission Modification not listed above.

Additionally, the Extended Warranty for Modified Vehicles shall cover the cost of any OBD diagnostic scan for malfunctions that trigger the OBD malfunction indicator light (MIL), regardless of whether the malfunction is attributable to a part that is covered under the Extended Warranty for Eligible Vehicles.

B-2

## Appendix C

## Extended Warranty for Subject Vehicles
### (Vehicles for which there is no Approved Emission Modification)

Subject to standard limitations that must be identified to owners and lessees of Subject Vehicles, which may set forth exclusions like accident, abuse, neglect, or installation of unexempted parts (as that term is described in 13 C.C.R. § 2036(d)(10)), and applicable existing warranty provisions that will remain in effect, pursuant to Paragraph 33 of the Consent Decree, the Extended Warranty for Subject Vehicles that do not have an applicable Approved Emission Modification shall cover the cost of all parts and labor needed to repair the items listed below, including diagnostic services and OBD scans, for the timeframes set out below, regardless of mileage:

      a.    The Extended Warranty for Subject Vehicles shall cover the following parts until April 1, 2029, regardless of miles accumulated by the Subject Vehicle:

      1)    Diesel Oxidation Catalyst ("DOC"),

      2)    Selective Catalyst Reduction ("SCR") Catalyst, and

      3)    Exhaust Gas Recirculation ("EGR") Valve.

      b.    The Extended Warranty for Subject Vehicles shall cover the following parts until April 1, 2032, regardless of miles accumulated by the Subject Vehicle:

      1)    Engine Control Unit ("ECU") and Software,

      2)    DEF Line Heaters,

      3)    DEF System Control Unit ("DCU") and Software,

      4)    DOC Inlet Temperature Sensor,

      5)    DOC Outlet Temperature Sensor,

      6)    Diesel Particulate Filter ("DPF" or "DPR"),

      7)    DPF Outlet Temperature Sensor,

      8)    DPF Pressure Sensor – Upstream,

      9)    DPF Pressure Sensor – Downstream,

10)       Particulate Matter ("PM") Sensor,

11)       SCR Inlet Temperature Sensor,

12)       NOx Sensor – Upstream,

13)       NOx Sensor – Downstream,

14)       All OBD Sensors for the DPF System,

15)       Camshaft Position Sensor,

16)       Coolant Temperature Sensor,

17)       Crankshaft Position Sensor,

18)       Intake Air Flow Meter, and

19)       Outside Air Temperature Sensor.

c.      The Extended Warranty for Subject Vehicles shall cover the following parts, regardless of the miles accumulated by the Subject Vehicle, until the date which is 10 years after the date on which the Subject Vehicle was first delivered to an owner or lessee for purposes other than resale:

1)       After Turbo Catalyst,

2)       DEF Supply Module, Pump, and Temperature Sensor Unit,

3)       DEF Quality Sensor,

4)       Turbocharger,

5)       Fuel Cut Valve, and

6)       Burner Atomizer.

The Extended Warranty for Subject Vehicles shall also cover the cost of any OBD diagnostic scan for malfunctions that trigger the OBD malfunction indicator light ("MIL"), regardless of whether the malfunction is attributable to a part that is covered under the Extended Warranty for Subject Vehicles.

C-2

**Appendix D**

**Hino Financial Information**

At the request of the United States, Defendants provided the following information regarding their ability to pay a civil penalty in this matter:

1. Annual financial statement information for:

   a. Hino Motors, Ltd. for the fiscal years ending ("FYE") March 31, 2010-2024.

   b. Hino Motors Sales U.S.A., Inc. for FYE 2010-2024.

   c. Hino Motors Manufacturing U.S.A., Inc. for FYE 2010-2022.

2. Annual financial projection information for:

   a. FYE 2024-2028, prepared by Hino in November 2023.

   b. FYE 2024-2028, prepared by Hino in April 2024.

   c. FYE 2025-2028, prepared by Hino in June 2024.

   d. FYE 2025-2028, prepared by Hino in September 2024.

3. Presentation by Hino consultants, AlixPartners, titled "Hino Motors, Ltd. - Ability to Pay Observation and Analyses," dated April 2, 2024.

4. Responses to information requests by the United States related to:

   a. Hino's lines of credit, long-term borrowings, and bonds payable.

   b. Hino's historical assets and assets potentially available for sale.

   c. Hino's major shareholders for FYE 2011-2024.

   d. Hino and Toyota Motor Corporation's related-party transactions for FYE 2011-2024.

   e. Potential merger involving Hino and Mitsubishi Fuso Truck and Bus Corporation ("MFTBC").

   f. Long-term agreement between Hino and Hexagon Purus.

   g. Planned closure of Hino's plant in Marion, Arkansas.

   h. Other aspects of Defendants' income, expenses, assets, liabilities, and cash flows.

D-1